STATE OF WEST VIRGINIA

*v.*

ROGER LEE ROWE

(No. 14567)

Decided December 18, 1981.

*Marjorie Martorella, Joseph Martorella, Martorella & Martorella, Robert E. Vital,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Frances W. McCoy,* Assistant Attorney General, for defendant in error.

PER CURIAM:

This is an appeal by Roger Lee Rowe from a final order of the Circuit Court of Wayne County which sentenced him to life imprisonment upon a jury verdict of guilty of first-degree murder without mercy. His principal assignments of error relate to the giving of certain instructions. We find that at least one of the instructions was improper and requires reversal; consequently, we find it unnecessary to address the other errors.[1]

The appellant complains that State's Instruction No. 9 improperly places the burden of proving insanity on the defendant:

> "The Court instructs the jury that in this case the defendant, Roger Lee Rowe, has entered a plea of "Not Guilty" by Reason of Insanity and, therefore, as to the plea of "Not Guilty by Reason of Insanity" if you find from the evidence that the State of West Virginia has proven to you beyond any reasonable doubt every material element as contained in the indictment then, and in that event, the burden of proving Roger Lee Rowe was

---

[1] However, we would point out that upon retrial, the State should note that State's Instruction No. 3 is questionable in light of our holding in *State v. Keffer,* ___ W. Va. ___, 281 S.E.2d 495 (1981).

insane at the instant he committed the crime is upon the defendant; further,

The burden is upon the defendant to prove his insanity to such a degree of certainty, as will, when the whole evidence is considered, create and leave in your mind a reasonable doubt as to the guilt of Roger Lee Rowe."

The appellant objected to this instruction at the time it was given and again in a motion to set aside the verdict and award a new trial. He argues that *State v. Milam*, 163 W. Va. 752, 260 S.E.2d 295 (1979) is dispositive. The applicable law is summarized in Syllabus Point 2 of *Milam*:

"There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense."

The State contends that *Milam* was decided on November 20, 1979, and because the appellant was convicted on July 28, 1978, the law as set forth in *Milam* is not applicable to this case. Specifically, the State argues that *Milam* should not be made fully retroactive. We spoke to this issue recently in *State v. Gangwer*, ____ W. Va. ____, 283 S.E.2d 839 (1981) in the context of the burden of proving self-defense. The same rule applies to the burden of proof with regard to the insanity defense. In *Gangwer*, we clarified the concept of "full retroactivity":

"The concept of 'full retroactivity' in a criminal case ordinarily means that the new rule is available not only for those cases in litigation or on appeal where the point has been preserved but is also available by way of collateral attack on a final judgment through a writ of habeas corpus."

Clearly, the rule in *Milam* was not intended to allow "full retroactivity". To what extent retroactivity was applicable, however, was not clear from our opinion. *State v. Gangwer, supra*, answers this question in Syllabus Point 3:

"In the absence of any substantial countervailing factors, where a new rule of criminal law is made of a nonconstitutional nature, it will be applied retroactively only to those cases in litigation or on appeal where the same legal point has been preserved."[2]

Since the appellant made a specific timely objection at trial to the giving of State's Instruction No. 9, we conclude that he is entitled to the benefit of the *Milam* rule, and the case is reversed on this basis.

The appellant also contends that the State failed to carry its burden of proving him sane beyond a reasonable doubt. The State offered no expert testimony of its own to oppose the psychiatric testimony of the appellant. However, this is not fatal to the State's case since we held in *State v. Milam* that "[t]here are those occasions where the psychiatric testimony offered by the defendant is so demolished by cross-examination that the state need not counter with its own expert." 260 S.E.2d at 302. And recently in *State v. Wimer*, ____ W. Va. ____, 284 S.E.2d 890 (1981), we explained that the burden of proving sanity can be carried not only by expert psychiatric testimony, but by the evidence presented about the facts and circumstances surround the crime. In *Wimer*, we found that the State had sustained its burden.

We must now examine the expert testimony given in the case before us. Dr. Larry Smith, the first defense psychiatrist, testified that during his single examination of appellant the appellant displayed poor insight, but his demeanor seemed fairly appropriate to his situation and his speech was spontaneous. Based on this examination, Dr. Smith also testified that the appellant's memory was partially impaired; that he had attempted self-harm on multiple occasions by cutting himself and that the appellant's history showed that he had been treated by a psychiatrist in North Carolina in 1974 for nerves. The appellant told Dr. Smith that on the day of the murder he had been "drinking kind of heavy and smoking pot." Also,

---

[2] *See*, n. 5 of State v. Gangwer, ____ W. Va. ____, 283 S.E.2d 839 (1981).

that he was "drinking beer and whiskey and smoking and taking that dope. It was some white-looking pills and some powder in a tin-foil wrapper." On the basis of this examination, the doctor diagnosed: (1) anti-social personality, and (2) history of drug abuse.

When asked if the appellant had the mental capacity to conform his conduct to the requirements of the law, the doctor answered, using the notes he made previously, "I feel that the effect of alcohol and the chemicals under which the individual alleges to have been operating, would cause the individual to lack partial capacity to conform his conduct to the requirements of the law." When asked whether the appellant was capable of forming intent, the psychiatrist replied, "I feel that he had a partial capacity to conform his conduct. From the history that I obtained of the use of alcohol and drugs, if this is factual, the individual could very well have had some impairment of his ability to control his intent." In this State voluntary intoxication has never been allowed as a defense of diminished capacity; it will only reduce first-degree murder to second-degree murder.

On the State's cross-examination, the psychiatrist admitted that he had no knowledge whether the appellant was under the influence of drugs or alcohol at the time the crime was committed and that when he saw the appellant in his office, the appellant was capable of conforming his conduct to the requirements of the law. Dr. Smith testified that the anti-social diagnosis would not affect the appellant's ability to conform his conduct to the law.

The second defense psychiatrist, Dr. Delano Webb, testified that the appellant told him he had no memory of what occurred on the day of the murder after he consumed the drugs and alcohol. The psychiatrist reiterated Dr. Smith's diagnosis of an anti-social personality and drug abuse. Dr. Webb's report stated that if the appellant had been under the influence of drugs and alcohol he may have been suffering from "organic brain syndrome". In answer to a hypothetical question about the appellant's capacity on the day of the murder, he stated that the appellant

would not be able to conform his acts to the requirements of the law if he had ingested the amount of drugs that he said he did.

On cross-examination Dr. Webb testified that at the time of his interview with him, the appellant had the capacity to conform his conduct to the law and that the personality test given to the appellant was invalid because "Mr. Rowe has exaggerated his difficulties so much."

In view of the psychiatric evidence offered, and in view of the circumstances surrounding the crime and other matters of evidence contained in the record concerning the question of the appellant's sanity, we are of the opinion that the jury could properly have concluded beyond a reasonable doubt that the appellant was sane at the time of the crime. This is particularly so because the psychiatric testimony that the appellant may not have been able to conform his conduct to the requirements of the law was based largely on the appellant's story of what drugs and alcohol he had consumed. The jury was certainly entitled not to believe this evidence if they chose. We conclude, therefore, that the State has sustained its burden of sanity and that a retrial is not barred under the principles set forth in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Accordingly, the judgment of the Circuit Court of Wayne County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*