299 S.E.2d 31

**STATE of West Virginia**

v.

**Larry Edward PATTON.**

**No. 15408.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1982.

---

Michael E. Froble, Asst. Atty. Gen., Charleston, for appellee.

Jeniver J. Jones, Sutton, for appellant.

PER CURIAM:

Appellant Larry Patton was indicted for the felony of manufacturing and possessing with intent to manufacture marijuana in violation of *W. Va. Code*, 60A–4–401 [1971]. He was convicted by a jury in the Circuit Court of Braxton County and sentenced to a term of one to five years in the penitentiary. Following the circuit court's denial of his motion to set aside the verdict and award a new trial, the appellant prose-cuted this appeal. For the reasons set forth below, we affirm.

The appellant rented and moved into a house located on a farm commonly referred to as Moon Hill sometime between June 28, 1978 and July 5, 1978. The farm was locat-ed in an area of Braxton County known as Fall Run. On September 15, 1978, the ap-pellant and his wife, Ruby Ellen Patton, were arrested and charged with manufac-turing and possessing with intent to manu-facture a controlled substance, i.e., mari-juana.

At the appellant's trial the State's evi-dence consisted of testimony that between six hundred and seven hundred marijuana plants were growing approximately two hundred and fifty feet from the dwelling house in which the appellant and his family resided. The plants were about eight feet from a road leading to another farm, the dwelling house on which was approximate-ly 2,000 feet away. The plants were grow-ing in rows and ranged in height from two feet to ten feet. There was evidence that although weeds were growing on the land surrounding the plot where the plants were growing, the dirt around the plants them-selves had been hoed and was a different color than that outside the garden area. In addition, the appellant had a hunting dog on the premises which he kept tied to a shed located about seventy yards from the house. The marijuana plants were grow-ing approximately fifteen feet from the shed and there was a path around the shed leading directly to the plants.

On the day of his arrest, September 15, 1978, the appellant signed a consent to search form for the outbuildings on the property, but not for the dwelling house. The outbuildings consisted of the shed, a cellar, and a corncrib. No evidence was found in either the shed or the cellar. In the corncrib the police found one screen wire with leaf fragments on it; half of the fragments were green while the other half were dried. A second screen wire found in the crib had plant stems and leaves on it, the leaves were stripped off, and a piece of plastic beneath the screen contained a fine

substance which was later analyzed as marijuana leaves. Also found in the corncrib were green plants hanging upside down from the ceiling. Jerry Crites, Deputy Sheriff of Braxton County, testified that samples were taken from the plants growing in the ground, the fragments on and under the wire screen and the plants hanging from the rafters in the corncrib. Raymond J. Barber, a chemist for the West Virginia Department of Public Safety, testified that the substance sent to him by Deputy Sheriff Crites on September 26, 1978, was examined and found to be marijuana leaves and marijuana leaf fragments.

The appellant took the stand in his own behalf and testified that he moved into the house where he was living at the time of his arrest sometime between June 28, 1978 and July 5, 1978. He further testified that although he was a roof bolter in the coal mines by profession, he was not working full-time during the July to September period because he had quit his job to look for one in closer proximity to his house. The appellant further stated that he did not know what marijuana plants looked like and that he had never placed any marijuana in the corncrib nor had he ever used the corncrib. He stated that there were "quite a few" paths leading to the marijuana plants but that he did not know who or what made them, and he denied ownership of the screens found in the corncrib. The appellant admitted that he had a dog which he kept tied to the shed on the house side and that the marijuana plants were located between fifteen and twenty feet from the shed. He also testified that he mowed the yard around the house but only the portion that had been brush hogged before he moved in.

Linda Claypool, who had arranged for the appellant and his wife to rent the house in which they resided in September of 1978, testified that her sixteen-year-old brother mowed the lawn at Moon Hill with a brush hog in the latter part of June 1978. She was present at the time and saw marijuana plants growing around the house but did not inform the appellant of the plants' existence. She further testified that her mother and Ruby Patton, the appellant's wife, also saw the marijuana plants.

Joy Wimer, Mrs. Claypool's mother, testified that she had seen four or five plants which her daughter identified as marijuana when her family and the appellant and his family were cleaning up "Moon Hill" in June of 1978. These plants were in the front yard. As the final defense witness, Ruby Patton testified that she had never seen her husband go into the corncrib and that to her knowledge he did not know there was marijuana on the property where they lived.

 In his first assignment of error, the appellant contends that the trial court erred in overruling his motion to exclude the State's evidence and to direct a verdict for the reason that the State failed to prove a *prima facie* case. Specifically, the appellant argues that the State failed to prove that he manufactured and possessed with intent to manufacture, marijuana,[1] and failed to prove that he was in possession of the premises where the marijuana was growing and stored.

 In syllabus point 4 of *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975) we stated:

"The offense of possession of a controlled substance also includes constructive possession, but the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled

1. "Manufacturing" was defined by this Court in syllabus point 2 of *State v. Underwood*, 168 W.Va. 52, 281 S.E.2d 491 (1981):
 "The prohibition against manufacture of a controlled substance under W.Va.Code, 60A–1–101(m), includes a prohibition against the growing of marijuana since 'production' is a defined term of manufacture and 'production' under W.Va.Code, 60A–1–101(u), is defined to include planting, cultivating and growing."

We also commented on the proof required in syllabus point 4:
 "Under W.Va.Code, 60A–4–401(a), in order to prove the offense of manufacturing a controlled substance, it is not necessary to prove that the defendant possessed the controlled substance with intent to manufacture or deliver the same."

substance and that it was subject to defendant's dominion and control."

As a corollary, we held that "[m]ere proximity to narcotic drugs is not sufficient to convict a defendant of possession. The chain of evidence must link the defendant with the drugs to the extent that an inference may be fairly drawn that the defendant had knowledge of the presence of the drugs where they were found and exercised control over them." *State v. Dudick, supra* at 467.

 Although there was no evidence presented at trial that appellant ever tended the marijuana plants, the jury had before it properly introduced evidence and heard testimony from which it certainly could have determined that the appellant knowingly possessed between six hundred and seven hundred live marijuana plants. The jury could have fairly drawn an inference that the appellant knew the marijuana was growing on his rented property and knew that there were screen wires in and marijuana plants hanging from the rafters of the corncrib. The evidence, is therefore, sufficient for a conviction of manufacturing and possession with intent to manufacture marijuana. *See, State v. Underwood,* 168 W.Va. 52, 281 S.E.2d 491 (1981).

The appellant's next assignment of error complains of the reasonable doubt instructions proferred by the State and given to the jury by the trial court. A timely objection was made to these instructions at trial by defense counsel; however, we note that the objection was couched in the very general terms that the instructions were not justified by the evidence. The legality of the principles in the instructions was not questioned. State's Instruction No. 2 reads in part as follows:

"The Court instructs the jury that while the Defendant is entitled to the benefit of every reasonable doubt, he is not entitled to anything more. A reasonable doubt does not mean a vague, fanciful or imaginary doubt. It means doubt

based on reason—a doubt for which a reason can be given."

State's Instruction No. 3 reads in part:

"The Court instructs the jury that to prove beyond a reasonable doubt does not mean that the State must make the proof by an eye witness or to a positive and absolute certainty. This measure of proof is not required in any case. If, from all the evidence, the jury only believe it is possible, or that it may be, or that perhaps the Defendant is not guilty, this degree of uncertainty alone would not amount to such a reasonable doubt as to entitle the Defendant to an acquittal."

 These instructions are clearly contrary to what this Court said with regard to reasonable doubt in *State v. Keffer,* 168 W.Va. 59, 281 S.E.2d 495 (1981)[2] and should not be given again. However, the record indicates that the court below gave nine other instructions which in some context correctly stated the law relating to reasonable doubt. At least two of those instructions directly and correctly defined reasonable doubt. These instructions were sufficient to correct the error. *State v. Helmick,* 169 W.Va. 94, 286 S.E.2d 245 (1982); *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980).

The appellant also argues that the court erred in giving the State's instruction on circumstantial evidence and in refusing to give Defendant's Instruction No. 1 which would have instructed the jury to find the defendant not guilty. Having reviewed the State's instruction we find that it complies with the law and was applicable to the facts of this case as developed at trial. Neither do we find error in the court's refusal to instruct the jury to find the appellant not guilty. That instruction was not justified by the evidence.

For the above reasons, the judgment of the Circuit Court of Braxton County is affirmed.

Affirmed.