315 S.E.2d 574

**STATE of West Virginia**

v.

**Mack PEYATT.**

**No. 15799.**

Supreme Court of Appeals of
West Virginia.

Dec. 15, 1983.

Rehearing Denied April 11, 1984.

318

Janet Frye Steele, Asst. Atty. Gen., Charleston, Linda Nelson Garrett, Pros. Atty., Webster County, Webster Springs, for appellee.

Howard J. Blyler, Cowen, for appellant.

McHUGH, Justice:

This action is before this Court upon the appeal of Mack Peyatt, appellant and defendant below, from convictions in the Circuit Court of Webster County for incest,[1] first degree sexual assault[2] and third degree sexual assault.[3] Pursuant to such convictions, the trial court sentenced the appellant to indeterminate terms of not less than five nor more than ten years, not less than ten nor more than twenty years and not less than one nor more than five years, respectively, to be served concurrently. This Court has before it the petition for appeal, all matters of record and the briefs and oral argument of counsel.

1. *W.Va.Code,* 61-8-12 [1931], provides: "If any male person shall have sexual intercourse with his ... daughter, ... every such person shall be guilty of a felony, and upon conviction, shall be confined in the penitentiary not less than five nor more than ten years."

2. *W.Va.Code,* 61-8B-3 [1976], provides, in part:
   (a) A person is guilty of sexual assault in the first degree when:
   . . . .
   (3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old.
   (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned not less than ten nor more than twenty years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than ten nor more than twenty years.

3. *W.Va.Code,* 61-8B-5 [1976], provides, in part:
   (a) A person is guilty of sexual assault in the third degree when:
   . . . .
   (2) Being sixteen years old or more, he engages in sexual intercourse with another person who:
   (i) Is incapable of consent because he is less than sixteen years old; and
   (ii) Is at least four years younger than the defendant.
   (b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years.

The indictment in this case was based upon the allegations of the appellant's daughter, S,[4] who claimed that the appellant had frequently engaged in sexual intercourse with her from the time of her fourth birthday until she was approximately twelve years old. Upon the appellant's motion for a bill of particulars, the prosecution tendered the following answer:

[T]he acts alleged in the indictment occurred on March 3, 1980 in the defendant's home in Webster County, West Virginia on December 8, 1979; on every birthday of ... [S] ... since she was four years old, except for the last one in 1981; on May 21, 1980 in the defendant's home in Webster County, West Virginia; on the weekend before the end of the school term in defendant's home in Webster County, West Virginia; on the Saturday and Sunday two weeks after the fall 1980 term of school started in defendant's home in Webster County, West Virginia; on every Sunday in ... [S's] ... memory with the earliest date being her fourth birthday; in all rooms of defendant's home except the kitchen, in the woods behind said home and one time during a summer, in the defendant's automobile, all in Webster County, West Virginia.[5]

Prior to trial, the appellant filed various motions, one of which was to determine the competency of the appellant to stand trial. At a subsequent hearing on the matter, a psychiatrist testified that the appellant possessed sufficient mental ability to appreciate his actions during the commission of the crimes and that the appellant was competent to stand trial. In addition, the trial court refused to order further psychiatric examination of S to determine whether she was fabricating the allegations against her father.

At trial, the prosecution introduced, in addition to S's testimony, expert medical evidence that S's "hymen was obliterated. It look[ed] like that of a married woman." During S's testimony, she gave a fairly detailed description of the acts the appellant was accused of committing, including the locations where the acts occurred. S further testified that she finally decided to report the activity with her father only after she saw a "commercial about sexual abuse on TV." She stated that "it got me shook up and I decided I should tell before I got hurt."

The appellant sought to show that S fabricated the story about the appellant as a result of her taking medication for epilepsy from which she has suffered since age nine. The defense further attempted to introduce evidence that S had been sexually promiscuous with other males in order to rebut the inference raised by the prosecution's medical expert that the appellant was responsible for her "obliterated" hymen. This latter contention was supported by the testimony of S's siblings, her mother and the appellant. However, after an *in camera* hearing on the issue, the trial court refused to allow the introduction of such evidence under West Virginia's rape shield statute.[6]

The prosecution offered rebuttal witnesses who testified that epileptic seizures and the medication prescribed to treat them would not cause S to fabricate the allegations against her father and that it is common for sexually abused children to report long-term sexual abuse upon reaching puberty.

The appellant's principal assignments of error are as follows: (1) his separate indictments, convictions and sentences for first and third degree sexual assaults and incest violate the double jeopardy clauses of the Constitutions of West Virginia and the United States; (2) the trial court violated his rights under the confrontation clauses of the Constitutions of West Virginia and the United States when it refused to allow the appellant to introduce evidence of the

---

**4.** For the protection of the victim, this Court will hereinafter refer to the daughter of the appellant as "S."

**5.** The evidence introduced at trial by the prosecution followed substantially the dates and loca-

tions of the alleged sexual offenses as set forth in the bill of particulars.

**6.** For a discussion of West Virginia's rape shield statute, *see infra* section II.

victim's past sexual conduct; (3) the trial court erred when it permitted the prosecution to introduce rebuttal witnesses; and (4) the trial court erred when it gave various instructions to the jury upon the definition of reasonable doubt.[7]

## I

The appellant contends that the trial court erred when it refused to dismiss the indictment or require the prosecution to elect between the sexual assault charges and the incest charge. The appellant argues that separate indictments, convictions and sentences for violating our incest statute and our sexual assault statutes, when such convictions arise out of the same act, infringe upon his rights under the double jeopardy clauses of the Constitution of West Virginia and the Constitution of the United States.[8]

In West Virginia, "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Syl. pt. 8, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983),[9] *quoting Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the *Blockburger* test it must be determined whether convictions for violations of the first and third degree sexual assault statutes and conviction for incest constitute convictions for the same offense when such convictions arise out of the same act.

In West Virginia, a conviction for first degree sexual assault includes sexual intercourse by an offender fourteen years of

7. The following assignments of error are without merit and require no further discussion by this Court: the trial court erred when it refused to grant the appellant's motions for a continuance and further psychological and medical examination of the appellant and the victim, *see* syl. pt. 2, *State v. Hodges*, 172 W.Va. 322, 305 S.E.2d 278 (1983) (granting of motion for a continuance is within the sound discretion of the trial court), syl. pt. 4, *State v. Demastus*, 165 W.Va. 572, 270 S.E.2d 649 (1980) (granting of motion for psychological and medical examinations is within the sound discretion of the trial court); the trial court erred when it failed to require the prosecution to provide the appellant with a more definite statement concerning the times and places of the alleged sexual offenses, *see* syl. pt. 5, *State v. Meadows*, 174 W.Va. 247, 304 S.E.2d 831 (1983) (sufficiency of bill of particulars is within the sound discretion of the trial court); the trial court erred when it failed to strike from the record testimony about the appellant's sexual activity with S in New Hampshire, *see State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983) (ruling on admissibility of evidence generally within the sound discretion of trial court); the trial court erred when it failed to sustain the appellant's objections to various comments by the prosecution during closing argument, *see* syl. pt. 7, *State v. Meadows, supra* (clear prejudice and "manifest injustice" must be shown to warrant reversal for improper remarks by the prosecution to the jury); the trial court erred when it submitted to the jury a verdict form that did not contain various lesser included offenses, *see* syl. pt. 2, *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982) (instructions on lesser included offenses not available where there is no evidentiary insufficiency on greater offense); the trial court erred when it denied the appellant's motion for

a new trial based upon newly discovered evidence, *see* syllabus, *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979) (motion for new trial based upon newly discovered evidence generally refused where sole object of evidence is to discredit or impeach witness); and, that the trial court erred when it denied the appellant's motions for directed verdicts and to set aside the jury verdict based upon the insufficiency of the evidence and the cumulative effect of all the above assigned errors, *see* syl. pt. 1, *State v. Meadows, supra* (evidence must be "manifestly inadequate" with "consequent injustice" being done to warrant reversal upon insufficiency of evidence), syl. pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972) (cumulative effect of assigned errors must be such as to deprive the defendant of a fair trial).

8. The appellant does not contend that his convictions for first and third degree sexual assaults violate his rights under the double jeopardy clauses. He merely asserts that convictions under our incest statute and our sexual assault statutes, generally, are violative of his double jeopardy rights.

Art. III, § 5 of the Constitution of West Virginia states: "No person shall ... be twice put in jeopardy of life or liberty for the same offense." In addition, the Fifth Amendment to the Constitution of the United States provides: "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb...."

9. We note that *State v. Zaccagnini, supra,* was filed after the appellant in this case was convicted; however, the principles are controlling in this case. *See State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440 (1980).

age or older with a person who is incapable of consent because he is less than eleven years old or physically helpless and sexual intercourse obtained by "forcible compulsion." *W.Va.Code*, 61–8B–3 [1976]. *See supra* note 2. In addition, a conviction for third degree sexual assault may be obtained by proving "sexual intercourse with another person who is incapable of consent because he is mentally defective or mentally incapacitated ..." or sexual intercourse by a person sixteen years of age or older with a person who is "incapable of consent because he is less than sixteen years old ... [and] ... at least four years younger than the defendant." *W.Va.Code*, 61–8B–5 [1976]. *See supra* note 3. Conviction for incest may be achieved solely by proving sexual intercourse between the proscribed relationships. *W.Va.Code*, 61–8–12 [1931]. *See supra* note 1.

■ It is clear that convictions under the sexual assault statutes and the incest statute require proof of different elements and are, therefore, not the same offense under the *Blockburger* test. In the case of first and third degree sexual assaults, convictions may be obtained by proving sexual intercourse without consent by reason of force, age or physical or mental infirmity. However, conviction for incest may be achieved by proving sexual intercourse between the prohibited relationships; in this case, father and daughter. Consent or the lack thereof is not an element of incest. Therefore, separate convictions for sexual assaults and incest, although they arise from the same act, do not constitute the same offense for purposes of the double jeopardy clauses. *See State v. Brittman*, 639 S.W.2d 652 (Tenn.1982) (under *Blockburger* test convictions for aggravated sexual assault and incest arising out of same act not violative of double jeopardy); *State v. Martin*, 634 S.W.2d 639 (Tenn.Cr.App.

1982) (under *Blockburger* test convictions for first degree sexual conduct and incest arising out of the same act are not violative of double jeopardy). *See also State v. Proulx*, 110 N.H. 187, 263 A.2d 673 (1970) (subsequent prosecution for statutory rape after acquittal for incest arising out of the same act is not necessarily barred by double jeopardy); *State v. Pancake*, 170 W.Va. 690, 296 S.E.2d 37, 42 (1982) ("[r]ape is not a lesser-included offense of burglary" under the *Blockburger* test). *But see State v. Washington*, 28 Or.App. 765, 561 P.2d 644 (1977) (subsequent trial for incest after sexual assault conviction was prohibited under the statutory "criminal episode" or "same transaction" test for procedural reasons).

## II

The appellant next asserts that the trial court violated his rights under the confrontation clauses of the Sixth Amendment to the Constitution of the United States and Article III, Section 14 of the Constitution of West Virginia, when it refused to allow the appellant to introduce evidence of the victim's past sexual behavior under West Virginia's rape shield statute, *W.Va.Code*, 61–8B–12 [1976].[10] The relevant portion of that statute is subsection b and it provides as follows:

In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, that such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his previous sexual conduct an issue in the trial by introducing evidence with respect thereto.[11]

10. Art. III, § 14 of the Constitution of West Virginia provides that "the accused shall ... be confronted with the witness against him...." In addition, the Sixth Amendment to the Constitution of the United States states that "the accused shall enjoy the right ... to be confronted with the witnesses against him...."

11. Subsection a of *W.Va.Code*, 61–8B–12 [1976], provides:
In any prosecution under this article in which the victim's lack of consent is based solely on his incapacity to consent because he was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual

The appellant contends that the victim put her past sexual conduct into issue at trial when the prosecution's expert testified that S had the genitalia of a married woman and when S testified that the only penis she had ever seen was the appellant's. The appellant argues that he should, therefore, have been allowed to introduce evidence of the victim's sexual promiscuity with other males (1) to rebut the inference that the appellant was solely responsible for S having the genitalia of a married woman and (2) to impeach the victim's credibility with respect to her statement about never having seen any male sexual organs other than her father's. The prosecution argues, on the other hand, that such testimony did not bring S's past sexual behavior into issue, and, in any event, the appellant could produce no direct evidence of sexual intercourse between the victim and any other males, therefore, the exclusion of such evidence by the trial court was proper.

In *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979), this Court established the constitutionality of *W.Va.Code*, 61–8B–12 [1976], as it limits the extent to which a defendant in a criminal trial may introduce evidence of a sexual assault victim's past sexual conduct. *See* syl. pt. 1, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982). *See also Young v. State*, 429 So.2d 1162 (Ala.Cr.App.1983); *People v. Buford*, 110 Ill.App.3d 46, 65 Ill.Dec. 721, 441 N.E.2d 1235 (1982); *People v. Cornes*, 80 Ill.App.3d 166, 35 Ill.Dec. 818, 399 N.E.2d 1346 (1980). In *Green*, we approved the use of an *in camera* hearing by the trial court to balance the State's interest in protecting the victim of a sexual assault with the defendant's constitutional right to confront witnesses against him which includes the right to effective cross-examination. As the Supreme Court of Washington noted in *State v. Hudlow*, 99 Wash.2d 1, 659 P.2d 514, 522 (1983), "a criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense."

We further held in syllabus point 1 of *State v. Pancake*, 170 W.Va. 690, 296 S.E.2d 37 (1982) that "[a] trial judge's ruling after an *in camera* hearing on admissibility of evidence of a rape victim's prior sexual relationship with defendant will not be disturbed on appeal unless there is a clear abuse of discretion." This Court also held in *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983): "Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *See also* syl. pt. 2, *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981); syl. pt. 4, *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956).

Although subsection b of the West Virginia rape shield law does not make specific reference to a trial court reviewing the admissibility of impeachment evidence out of the presence of the jury, as required by subsection a on the issue of consent, the trial court in this case held a series of *in camera* hearings throughout the trial to determine the nature and relevancy of the evidence sought to be introduced by the appellant. The record indicates that the only persons the appellant presented with respect to S's prior sexual activity were her siblings, her mother and the appellant. Their testimony essentially referred to various incidents in which S was alleged to have engaged in sexual intercourse with a minor cousin, a minor neighbor and an adult male who was a friend of the appellant.

The appellant and his wife testified at the *in camera* hearing that the siblings of S told them of sexual activities by S with certain males. The siblings revealed names but their testimony relating to S's sexual activities with those males was unclear regarding sexual intercourse. Clearly, the appellant should have subpoenaed the males in question if he desired to pur-

conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, that such evidence heard first out of the presence

of the jury is found by the judge to be relevant.

Inasmuch as consent of the victim in this case is not an available defense because she was below the statutory age, subsection a of the rape shield law is inapplicable.

sue the issue. Under the circumstances of this case and upon review of the record, we hold that the trial court did not abuse its discretion when it excluded such evidence from consideration by the jury.

### III

The appellant further asserts that the trial court erred when it permitted the prosecution to introduce the rebuttal testimony of various expert witnesses. The appellant contends that such evidence was outside the scope of proper rebuttal. The prosecution's rebuttal witnesses testified to the effect that the medication S was taking to control her epileptic seizures would not alone cause her to fabricate the allegations against the appellant. The prosecution argues that such evidence was clearly proper in rebuttal because the appellant had raised such an inference when he presented his case-in-chief.

█ " 'Whether the State in a criminal proceeding may introduce further evidence after a defendant has rested his case is a matter within the sound discretion of the trial court, and the exercise of that discretion will rarely be cause for reversal.' Point 2, Syllabus, *State v. Fitzsimmons*, 137 W.Va. 585 [73 S.E.2d 136]." Syl. pt. 8, *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774 (1954). *See also State v. Ward*, 168 W.Va. 385, 284 S.E.2d 881, 885 (1981); Syl. pt. 4, *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981). Furthermore, "[t]he admissibility of evidence as rebuttal is within the sound discretion of the trial court, and the exercise of such discretion does not constitute ground for reversal unless it is prejudicial to the defendant." Syl. pt. 4, *State v. Blankenship*, 137 W.Va. 1, 69 S.E.2d 398 (1952), *overruled on other grounds, State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431, 432 (1977).

In the case before us, the trial court held an *in camera* hearing upon the issue of whether the prosecution would be allowed to present rebuttal evidence and the nature of that evidence. The prosecution informed the trial court that it desired to present three medical experts who would testify that the medication prescribed to treat S's epilepsy would not alone cause her to fabricate the allegations against the appellant. In addition, the prosecution sought to introduce a family stress expert to testify that it is not uncommon for children to report long-term sexual abuse by their parents upon reaching puberty. The appellant objected to the introduction of such evidence upon the ground that the appellant had presented no evidence to imply that the medication was responsible for S's behavior.

█ The trial court ruled that the appellant had "left an inference in the minds of the jury that this activity is related to the medication" and permitted the rebuttal testimony. However, the trial court limited the evidence to the effects of the medication on S's veracity. We find that the testimony introduced by the prosecution in rebuttal was proper and we further find that the appellant was not prejudiced by its introduction. The trial court exercised proper discretion in this regard.

### IV

█ The appellant asserts that the trial court erred when it gave the jury certain instructions proffered by the prosecution in which it attempted to define reasonable doubt. State's Instruction No. 11 reads as follows:

The Court instructs the jury that while it is true that if they should entertain a reasonable doubt of the defendant's guilt, they should find him not guilty; but the jury is further instructed that to authorize an acquittal on the ground of doubt alone, such doubt must be real and substantial and not a mere possibility that the defendant may be innocent.

State's Instruction No. 15 states:

The Court instructs the jury that if after considering all the evidence, you have a fixed conviction of the truth of the charge, you are satisfied beyond a reasonable doubt, then it is your duty to convict the defendant. The doubt which will justify an acquittal must be actual and substantial, not a fanciful or imaginary doubt, because everything relating

to human affairs and depending on moral evidence is open to some possible or imaginary doubt, that the defendant is guilty, though you also believe it possible he is not guilty, you should convict the defendant, but if you entertain a reasonable doubt as to his guilt as charged, then you should acquit him.[12]

As the appellant argues, the above instructions were disapproved by this Court in the case of *State v. Keffer*, 168 W.Va. 59, 281 S.E.2d 495 (1981). In syllabus point 2 of that case we held: "Where the State's instructions attempt to define reasonable doubt and such definitions are in substantial variance from customary reasonable doubt language so that the jury may well have convicted on a lesser standard of proof, such instructions will constitute reversible error." *See State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457, 462 (1980); *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975). *See also State v. Rowe*, 168 W.Va. 678, 285 S.E.2d 445 n. 1 (1981); *State v. Duncan*, 168 W.Va. 225, 283 S.E.2d 855, 857 (1981).

■ However, we have further held that the instructions specifically discouraged by *Keffer* warrant reversal of a conviction only where they are the sole definition of reasonable doubt offered to the jury. *State v. Boswell*, 170 W.Va. 433, 294 S.E.2d 287 (1982); *State v. McCourt*, 168 W.Va. 231, 283 S.E.2d 918 (1981). In other cases, this Court has concluded that where there are other instructions given to the jury that define reasonable doubt, the error of giving a *Keffer* instruction will not result in reversal. *State v. Patton*, 171 W.Va. 419, 299 S.E.2d 31, 33–34 (1982); *State v. Helmick*, 169 W.Va. 94, 286 S.E.2d 245, 250 (1982).

In the case before us, there were many other instructions offered to the jury defining reasonable doubt including State's Instruction No. 9 and Defense Instructions Nos. 1, 2, 8 and 11.[13] Therefore, the instructions complained of do not warrant reversal of the appellant's conviction.

For the foregoing reasons, the judgments of the Circuit Court of Webster County are hereby affirmed.

Affirmed.

NEELY, Justice, dissenting:

In all regards this is a tragic case. The record reveals that the Peyatt family lived in a squalor that is almost beyond the imagination of most ordinary people. The actions of the defendant that are alleged by the State are such as to inflame our passions and outrage our sensibilities. Nonetheless, this is a serious case involving twenty years of prison and the defendant is

---

12. The appellant also challenges State's Instruction No. 13, however, the record does not reveal that the appellant properly objected to the instruction at trial.

13. For example, Defense Instruction No. 2 reads as follows:

The Court instructs the jury that a reasonable doubt is an actual doubt that you are conscious of, after going over in your minds the entire case, giving consideration to all the testimony and every part of it. If you then feel uncertain and not fully convinced that the defendant is guilty, and believe that you are acting in a reasonable manner, and if you believe that a reasonable man in any matter of like importance would hesitate to act because of such a doubt as you are conscious of having, that is a reasonable doubt, of which the defendant is entitled to have the benefit, and you should find him not guilty.

Defense Instruction No. 11 states:

The Court instructs the jury that the burden of proof is upon the State to prove beyond all reasonable doubt every material element to the offense charged against the defendant.

1. It is never sufficient merely that the jury may believe the defendant to be guilty upon some conjecture, guess or speculative theory.

2. It is never sufficient merely that they may believe (his) guilt is more probable than (his) innocence.

3. It is never sufficient merely that the jury may have a mere suspicion, however strong, that the defendant is probably guilty.

4. It is never sufficient merely that the greater weight or preponderance of the evidence is in favor of the State.

5. It is never sufficient merely that the evidence is evenly balanced between the State and the defendant.

6. It is never sufficient merely that the State has produced the greater number of witnesses.

Although you may believe any or all of the foregoing enumerated items, unless the State has proved the guilt of the defendant beyond all reasonable doubt, the presumption of (his) innocence still applies, and you must find (him) not guilty.

entitled to all evidence that could possibly raise a reasonable doubt about his guilt in any juror's mind. Consequently, I must dissent from the court's holding in section II of the majority opinion, for reasons that I have already explored at length in my dissent in *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979).

The victim in the case before us testified that she had not had sex with any person but her father and that she had never seen another penis. The defendant proffered evidence from siblings that the victim had confessed to sexual relations with others and that those siblings had witnessed events that would lead an observer to conclude that the victim had engaged in sexual relations with others. The offer of testimony disclosed in the *in camera* hearing did not consist of eyewitness evidence of the victim's sexual intercourse with others, but it did consist of circumstantial evidence that might have led a reasonable person to conclude that the victim had had sexual relations with men other than her father. Apparently the siblings were willing to testify that an older man got into bed with the victim and the bed shook, and they were also willing to describe the victim under a pile of leaves with a male companion under compromising circumstances. Certainly evidence of this type would be admissible in a divorce case if the issue were adultery.

The victim's past sexual history was placed in issue because the condition of her hymen was used as circumstantial evidence to incriminate the defendant. Furthermore, testimony was elicited from her regarding her lack of sexual contact with men other than her father. If, indeed, the testimony proffered by the defendant were sufficient to convince a member of the jury that the victim had lied under oath about her prior sexual experience, such a blow to her credibility might have been sufficient to raise a reasonable doubt about her primary accusatory testimony.

I am also unpersuaded by the majority's assertion that the men who allegedly engaged in sexual relations with the victim should have been called as witnesses. What man in his right mind would admit to sex with an underaged minor in open court? The options of the fifth amendment and a grant of immunity are, of course, always open when such testimony is sought, but the far more practical course is to lie. If the men chose the option of lying, the defendant would have been worse off than by not offering their testimony.

The right to confront witnesses is a constitutional issue that goes directly to the truth-finding function of a court. Unlike so many of our other constitutional rules in criminal cases, it is not aimed at regulating official conduct in the abstract, but rather at assuring that particular individuals in very concrete cases are not convicted when they are innocent. *Naum v. Halbritter*, 172 W.Va. 610, 309 S.E.2d 109 (1983).