# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia, ex rel.**
**AIG Domestic Claims, Inc.,**
**Petitioner**

**v.)   No. 13-1048 (Ohio County 05-C-550)**

**The Honorable Larry V. Starcher,**
**Judge of the Circuit Court of Ohio County,**
**West Virginia, and Candy George, Individually**
**and as Guardian, Mother and Next of Friend of**
**Kyle George, a minor, and Mark George,**
**Respondents**

**FILED**

**February 21, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner (and defendant in the underlying action) AIG Domestic Claims ("AIG"), by counsel Don C.A. Parker and Laura E. Hayes, invokes this Court's original jurisdiction.  AIG seeks a writ prohibiting enforcement of an order of the Circuit Court of Ohio County that allows the plaintiffs in the underlying action to seek discovery of potentially unfair claim settlement practices that occurred after July 8, 2005, the date the Legislature abolished third-party actions for unfair claim settlement practices under the West Virginia Unfair Trade Practices Act ("UTPA").  AIG also asks this Court for a writ of mandamus compelling the circuit court to rule on whether the plaintiffs will be permitted to rely upon evidence of unfair claims handling activities by AIG that occurred after July 8, 2005, to establish their assertion that AIG violated the UTPA.  The plaintiffs in the underlying action (and respondents herein), Candy and Mark George, appeared by their counsel Ronald W. Zavolta.

On June 30, 2005, plaintiffs Candy and Mark George brought an action for injuries to their minor child, Kyle, arising from two accidents when he fell on a school playground.  The plaintiffs brought suit against the county school board, and against AIG for third-party unfair claim settlement practices in violation of the UTPA.  AIG was the claims handler for the county school board's insurance carrier.

On July 8, 2005, *W.Va. Code* § 33-11-4a(a) [2005] took effect and thereafter prohibited third-party lawsuits alleging unfair claim settlement practices, lawsuits just like that filed by the plaintiffs.  The statute says, in pertinent part:

> A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice.  A third-party claimant's sole remedy against a person for an unfair claims settlement practice or the bad faith settlement of a claim is the filing of an administrative complaint with the Commissioner. . . . A third-party claimant may not include

1

allegations of unfair claims settlement practices in any underlying litigation against an insured.

However, while the Legislature abolished *lawsuits* alleging third-party unfair claim settlement practices, the Legislature simultaneously established an *administrative process* whereby litigants could pursue administrative penalties against insurers for third-party unfair claim settlement practices. *See W.Va. Code* § 33-11-4a(b)-(j). Unfair claim settlement practices by insurers are still illegal; it was simply the forum for relief that was changed.

The plaintiffs settled their lawsuit against the county school board in 2009. Thereafter, the plaintiffs sought discovery on their allegations that AIG had engaged in unfair claim settlement practices in the resolution of their lawsuit.

AIG filed a motion for a protective order to limit the scope of discovery that could be sought by the plaintiffs. Specifically, AIG asked the circuit court to prohibit discovery of any unfair claim settlement practices by AIG that occurred after either the filing of the respondent's complaint or the effective date of *W.Va. Code* § 33-11-4a. AIG argued that the statute essentially prohibits the use at trial of unfair claim settlement practices that occurred after July 8, 2005, and therefore that conduct is not discoverable.

In an order dated April 11, 2013, the circuit court refused to issue a protective order. The circuit court reasoned that *W.Va. Code* § 33-11-4a only prohibits the filing of a lawsuit after July 8, 2005; it does not prohibit the evidence of unfair claims settlement practices that occurred after July 8, 2005, from being used in a pending lawsuit. Thus, the circuit court found that "the post July 8, 2005 claims activities of AIG are discoverable in this lawsuit."

On October 18, 2013, AIG filed a petition with this Court seeking a writ of prohibition to halt enforcement of the circuit court's order.

In Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we adopted the following guidelines where a writ of prohibition is sought:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be

satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

AIG asks that we prohibit enforcement of the circuit court's order allowing discovery of unfair claim settlement practices after July 8, 2005. AIG contends that the circuit court's order is clearly wrong "as a matter of common sense" because AIG's violations of the UTPA after July 8, 2005 "could not form the basis of a lawsuit when they took place." AIG further contends it should not be subjected to compensatory and punitive damages based upon unfair claim settlement practices that occurred after July 8, 2005. Lastly, AIG argues that any of AIG's violations of the UTPA after July 8, 2005 would not be admissible at trial.

We reject AIG's contentions. The UTPA, *W.Va. Code* § 33-11-4 [2002], was last amended in 2002 and prohibits a long list of activities by insurance companies. The UTPA declares violations of this list to be "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance." These activities are prohibited, regardless of whether the insurance company is dealing with a first-party insured or a third-party to an insurance policy.

More importantly, nothing in *W.Va. Code* § 33-11-4a (that was adopted in 2005) altered the list of prohibited activities contained in *W.Va. Code* § 33-11-4. All that the 2005 statute changed was to proscribe third-party plaintiffs from filing lawsuits based on insurance company claim settlement misconduct. Third-party plaintiffs must now file an administrative complaint with the insurance commissioner. First-party plaintiffs, however, may continue to bring lawsuits for violations of the UTPA.

Furthermore, the UTPA delineates certain activities as "unfair claims settlement practices." *W.Va. Code* § 33-11-4(9) prohibits various unfair claim settlement activities, but only so long as they are committed "with such frequency as to indicate a general business practice[.]" Hence, a first- or third-party plaintiff cannot simply complain that an insurance company violated *W.Va. Code* § 33-11-4(9) on one occasion; instead, they must establish "that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a 'general business practice' and can be distinguished by fair minds from an isolated event." Syllabus Point 4, *Doddrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996). *See also*, Syllabus Point 3, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981) ("More than a single isolated violation of W.Va. Code, 33–11–4(9), must be shown in order to meet the statutory requirement of an indication of 'a general business practice,' which requirement must be shown in order to maintain the statutory implied cause of action.").

In the instant case, the plaintiffs brought suit on June 30, 2005, before the effective date of *W.Va. Code* § 33-11-4a. To establish their claim that AIG committed unfair claims settlement practices in the resolution of their lawsuit in violation of the UTPA, *W.Va. Code* § 33-11-4(9) requires more than simply showing one isolated violation. The UTPA requires the plaintiffs to show that AIG engaged in unfair claim settlement practices with such frequency as to establish that the conduct was a pervasive "general business practice." To establish a "general business practice," the plaintiffs should be permitted discovery of AIG's claims settlement practices, whether or not those actions pre- or post-dated when *W.Va. Code* §

33-11-4a went into operation. Our rules indisputably permit "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" *W.Va.R.Civ.Pro.* 26(b)(1).

The plaintiffs timely filed their UTPA lawsuit when the law still permitted the filing of such suits. There is nothing in *W.Va. Code* § 33-11-4a to suggest the Legislature intended to retroactively preempt existing suits. And the circuit court's order permits discovery of AIG's claim settlement practices that post-date the adoption of the statute, and that will assist the plaintiffs in proving their allegation that AIG had a general business practice of violating the UTPA. On this record, we can find no error by the circuit court.

In its petition to this Court, AIG also seeks a writ of mandamus. AIG asks that we compel the circuit court to rule forthwith on the admissibility at trial of any post-July 8, 2005, unfair claim settlement practices by AIG. We stated the standard for a writ of mandamus in Syllabus Point 2 of *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969):

> A writ of mandamus will not issue unless three elements coexist -- (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

AIG is asking this Court to force the circuit court to rule on the admissibility of evidence before the parties have even conducted discovery. It is well established that the *West Virginia Rules of Evidence* and *Rules of Civil Procedure* allocate significant discretion to a trial court in making evidentiary and procedural rulings. *See, e.g.*, Syllabus Point 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995); Syllabus Point 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998); Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983); Syllabus Point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955).

Since the admissibility or exclusion of evidence is a question within the circuit court's discretion, AIG cannot establish a "clear legal right" to the relief sought and is therefore not entitled to mandamus relief.

We therefore deny the requested writ of prohibition and the requested writ of mandamus.

Writs denied.

**ISSUED:** February 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Brent D. Benjamin

Benjamin, Justice, dissenting:

Effective July 8, 2005, the West Virginia Legislature mandated that no further third-party settlement bad faith actions could be brought in the courts of this State. W. Va. Code § 33-11-4a(a) (2005). This included claims based upon allegations of bad conduct after this date. *Id*. In clear, direct and precise terms, the Legislature directed that claims not filed before July 8, 2005 and claims related to activities after July 8, 2005 must be brought only in an administrative action before the Insurance Commissioner of West Virginia. *Id*. On this clear command of the Legislature, it was thought there could be no serious disagreement – until today's majority opinion.

In refusing to grant the requested writs, the majority judicially rewrites the statutory law to circumvent the plain intention of the Legislature and, in so doing, creates a jurisdiction for courts to entertain complaints about alleged improper conduct occurring after July 8, 2005 -- despite the Legislature having already legislated that the proper jurisdiction to deal with such complaints is with the Insurance Commissioner. I not only am troubled by the majority's legally inaccurate result, but also by the appropriation by this Court of legislative power to reach this result.

The Unfair Trade Practices Act ("UTPA") was enacted "to regulate trade practices in the business of insurance . . . by defining . . . unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or

6

determined." W. Va. Code § 33-11-1 (1974). The UTPA prohibits unfair claim settlement practices, which are described in W. Va. Code § 33-11-4(9) (2002):

> No person shall commit or perform *with such frequency* as to indicate a *general business practice* any of the following:
> . . . .
> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> . . . .
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear . . . .

(In relevant part) (emphasis added). Under the plain language of W. Va. Code § 33-11-4(9), to maintain a suit under the statute, a plaintiff must refer to more than one act in order to show a general business practice. In other words, a general business practice is proven through a pattern of behavior. Here, the respondents ("Georges") complained of *past* behavior only by petitioner, AIG Domestic Claims Inc. ("AIG").

Third-party bad faith claims had been a source of political controversy for some time in West Virginia prior to 2005. Whether good or bad, the Legislature ultimately resolved the controversy by barring such claims as of July 8, 2005. W. Va. Code § 33-11-4a(a) extends this bar to the filing of claims and to allegations related to bad faith conduct after this date. Specifically, W. Va. Code § 33-11-4a(a) states, in pertinent part:

> A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice. A third-party claimant's sole

> remedy against a person for an unfair claims settlement practice or the bad faith settlement of a claim is the filing of an administrative complaint with the [Insurance Commissioner of West Virginia] . . . . A third-party claimant may not include allegations of unfair claims settlement practices in any underlying litigation against an insured.

Where, as here, the law and the legislative intent are so straightforward and clear, there should be no serious question but that the court below legally erred and that both writs should issue.

The issuance of both writs is also compelled factually. In their June 30, 2005 filing, the Georges asserted the following allegation of bad faith conduct by AIG in the settlement of their claims:

> (34) Defendant AIG *violated* the [UTPA] and/or West Virginia insurance regulations with such frequency as to indicate a general business practice, specifically including, but not limited to, not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear and other violations of the Unfair Claims Settlement Practices Act.
>
> (35) Defendant AIG in the handling of plaintiffs' claims *has violated* the [UTPA], West Virginia Code § 33-11-4(9), as well as the insurance regulations promulgated thereunder, including, but not limited to the following:
>
> a. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; and
> b. Failing to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

8

(Emphasis added). Although timely filed on June 30, 2005, to "beat" the upcoming July 8, 2005, deadline for the raising of a civil claim of third-party bad faith against AIG, the Georges chose to narrowly plead their allegations: they only alleged *past* conduct (conduct by AIG prior to June 30, 2005). Absent from their asserted claims was *any* allegation of ongoing bad faith conduct by AIG related to them such as might give rise to a legitimate discovery attempt to seek evidence *after* June 30, 2005. Nevertheless, the Georges thereafter sought not only to discover post-June 30, 2005, AIG conduct, they also now intend to rely on such conduct at the trial of this matter based upon the candid representation of their counsel during the oral argument of this case.

AIG sought a writ from this Court to compel the circuit court to rule on whether the Georges could rely on AIG's activity after July 8, 2005, to support their unfair claims settlement practices allegations. AIG also sought a writ to prohibit the circuit court from enforcing its order allowing the Georges to seek discovery of events that occurred after the abolition of third-party UTPA actions.

The majority's memorandum decision denies both writs. With regard to the writ to compel, the majority reasoned:

> To establish their claim that AIG committed unfair claims settlement practices in the resolution of their lawsuit in violation of the UTPA, *W.Va. Code* § 33-11-4(9) requires more than simply showing one isolated violation. . . . To establish a "general business practice," the plaintiffs should be permitted discovery of AIG's actions that violated the

9

UTPA, whether or not those actions pre- or post-dated when *W.Va. Code* § 33-11-4a went into operation.

The majority's decision does not clearly recognize that for the Georges to have asserted a valid claim, enough acts establishing a general business practice must have occurred prior to filing the claim; *i.e.*, a cause of action cannot be maintained on speculation of future bad acts. Furthermore, the Georges' complaint clarifies that, through its use of only the past tense, the Georges relied only on events occurring prior to the filing of their complaint. Had the Georges intended to include future events to further reinforce their allegation of a general business practice, they needed simply to include such language in their complaint.

Had the Georges alleged in their complaint that AIG "continues to violate" the UTPA, events occurring after the filing of the complaint and the effective date of W. Va. Code § 33-11-4a would be usable and discoverable to show a general business practice without violating W. Va. Code § 33-11-4a. Without that allegation in the complaint, subsequent bad acts must constitute a separate cause of action now barred by statute. W. Va. Code § 33-11-4a. With regard to the writ to compel, the majority erred by failing to give effect to the language of the complaint.

The majority compounds its error by denying the writ to prohibit the discovery of events following the effective date of W. Va. Code § 33-11-4a. The majority

10

supports this decision, stating that "our rules permit 'discovery regarding any matter, not privileged, *which is relevant* to the subject matter involved in the pending action[.]' *W.Va.R.Civ.Pro.* 26(b)(1)." (Emphasis added). Evidence of AIG's activity after the Georges filed their complaint is wholly irrelevant as a matter of law because the Georges' complaint specifically confines its allegations to events occurring prior to the date the complaint was filed. The subject discovery has the potential to result in a great and unjustified financial burden upon AIG. I would grant both the writ to prohibit and the writ to compel.