406 S.E.2d 458

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Martha FARMER, Defendant Below, Appellant.**

**No. 19753.**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided June 14, 1991.

David C. Smith, Johnston, Holroyd & Associates, Princeton, for Farmer.

Teresa A. Tarr, Asst. Atty. Gen., Charleston, for State.

**PER CURIAM:**

The appellant, Martha Farmer, appeals her conviction by a jury in the Circuit Court of Mercer County of malicious wounding. The appellant contends that her conviction should be reversed and that she should be awarded a new trial on the grounds that the trial court erred in: (1) admitting certain statements made by the victim, Basil Tines, to third parties after the shooting; (2) failing to declare a mistrial when the investigating officer allegedly made statements concerning the appellant's prior record; and (3) admitting into evidence statements regarding prior sexual relations between the appellant and the victim. The appellant also contends that the jury's verdict is contrary to the law and the evidence. This Court is of the opinion that there is no reversible error in this case.

On February 4, 1989, the appellant, who was then 23 years of age, travelled by bus from Florida to visit 83-year-old Basil Tines. The appellant telephoned Mr. Tines and requested that he meet her at the Princeton bus station. Mr. Tines picked up the appellant early that morning at the bus station, and they went to a restaurant. Later, the two of them returned to Mr. Tines' home in Island Creek.

At approximately 7:00 o'clock that evening, the appellant fired three shots from Mr. Tines' .38 caliber handgun. Although it is unclear from what angle these gunshots were fired, one of the bullets struck Mr. Tines in the center of his forehead.[1] She then threw the gun down and fled the house without wearing shoes or a jacket despite the cold temperature.

Mr. Tines called his neighbor, Titus Harris, and asked him to come over because he had been shot. Mr. Harris called another neighbor, David E. Martin, who then telephoned the state police to report the incident. When Mr. Harris and Mr. Martin arrived at Mr. Tines' residence, they found the appellant barefoot in his backyard in a hysterical state. When Mr. Harris and Mr.

---

**1.** It would appear that the bullet grazed Mr. Tines' forehead. The record reflects that the bullet wound left "an indentation scar" in the center of Mr. Tines' forehead.

Martin went into the house, they found Mr. Tines sitting in a chair in the living room near a "pool of blood." Mr. Martin then called the state police to report that Mr. Tines had been shot and to request an ambulance. When the state police arrived, Trooper Larry Bailes had an opportunity to briefly speak to Mr. Tines before he was taken to the hospital. The appellant was arrested and she gave a statement to Trooper K.J. Foreman.

The appellant was indicted by a grand jury on one count of malicious wounding. The appellant was found competent to stand trial, and was tried before a jury on August 15, 1989. The jury returned a verdict finding that the appellant was guilty of malicious wounding by use of a firearm as charged in the indictment. The appellant was sentenced to an indeterminate term of not less than two nor more than ten years in Pruntytown Correctional Center, and was to serve a minimum of three years before being eligible for parole since the crime was committed with the use of a firearm. This matter is now before the Court on an appeal of that conviction.

## I

The appellant first contends that the trial court erred in admitting into evidence statements made by the victim after the shooting to his neighbor, Mr. Martin, and to State Trooper Larry Bailes, on the ground that those statements were inadmissible hearsay. The appellant argues that Mr. Tines' statement to Mr. Martin

was not spontaneous since Mr. Tines had the opportunity to reflect from the time he called Mr. Martin until he arrived five or six minutes later. Furthermore, the appellant asserts that these statements are unreliable since Mr. Tines testified at the trial that he did not recall why the appellant shot him.[2]

The appellant also contends that the statement made by Mr. Tines to Trooper Larry Bailes did not fall within the excited utterance exception to the hearsay rule since the statement was made in response to questioning which occurred one hour after the shooting. The appellant further argues that Mr. Tines had the opportunity to discuss the shooting with his friends during that period.

The record in the case now before us indicates that Mr. Harris and Mr. Martin arrived at the scene of the incident approximately five or six minutes after Mr. Tines had called them for help. Mr. Martin testified that when he entered Mr. Tines' home, he found Mr. Tines sitting in a chair in the living room near "a puddle of blood." Mr. Martin further testified that Mr. Tines told him that the appellant had grabbed his gun and demanded all of his money.[3] Mr. Martin further testified that Mr. Tines "was mad and he had reason."

The statement made by Mr. Tines to Trooper Larry Bailes, forty to forty-five minutes after the shooting, was the same statement he had made earlier to Mr. Martin. Trooper Bailes testified that Mr. Tines told him that the appellant had grabbed his

---

**2.** There was evidence at trial that Mr. Tines suffered from memory lapses following the shooting. Mr. Tines testified that he could not remember why the appellant shot him. Furthermore, Mr. Martin testified that Mr. Tines had been experiencing a significant memory problem since the shooting.

**3.** At trial, Mr. Martin gave the following testimony regarding the statements by Mr. Tines:
  Q. She didn't mean to shoot him. Okay, did Mr. Tines indicate why he had—what had happened?
  A. Well Baz told me when he was sittin[g] on the chair—
  MR. SMITH: Your Honor, note my objection for the record.
  THE COURT: Overruled.
  By: Ms. Garton

Q. Go ahead?
  A. —Baz told me when he was sittin there in the chair, I asked him what had happened and he said that she grabbed my gun and said give me all your GD money.
  Q. Alright now, did she say—did he say GD or—or are you just saying that?
  A. No, that's what I'm sayin[g]. He said the words, you know. I didn't—I won't—I would rather not say 'em.
  Q. Okay. But I assume you're—that you're talking about someone is angry and says "God Damn"?
  A. Yes ma'am.
  Q. Okay, and then she demanded his money?
  A. Yes ma'am. That's what he told me.

gun and demanded that he give her his money. Trooper Bailes further testified that Mr. Tines stated that when he refused to give the appellant the money, she shot him.

Prior to our adoption of the Rules of Evidence, this Court recognized the spontaneous declaration exception to the hearsay rule in *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980). In syllabus point 2 of *Young*, we reiterated six factors, outlined in *Ward v. Raleigh County Park Board*, 143 W.Va. 931, 105 S.E.2d 881 (1958), that should be considered by the trial court in determining whether a statement or declaration is admissible as an excited utterance exception to the hearsay rule:

An alleged spontaneous declaration must be evaluated in light of the following factors: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

Following the adoption of the Rules of Evidence, more specifically, *W.Va.R.Evid.*

803(2),[4] we pointed out in syllabus point 1 of *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987): "Rule 803(2) of the West Virginia Rules of Evidence correctly contains the heart of the hearsay exception that was formally called a spontaneous declaration and which is now termed the excited utterance exception to the hearsay rule. The more detailed treatment of this exception contained in Syllabus Point 2 of *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980), is helpful to further refine the contours of the rule."

Furthermore, we have consistently recognized that an excited utterance or spontaneous declaration is admissible as an exception to the hearsay rule under the premise that a person stimulated by the excitement of an event and acting under the influence of that event will lack the reflective capacity essential for fabrication. *State v. Jones*, 178 W.Va. 519, 522, 362 S.E.2d 330, 333 (1987); *State v. Smith*, 178 W.Va. at 109, 358 S.E.2d at 193; *State v. Ray*, 171 W.Va. 383, 386, 298 S.E.2d 921, 923 (1982); *State v. Young*, 166 W.Va. at 315, 273 S.E.2d at 597.

Finally, in *Young*, citing *State v. Coram*, 116 W.Va. 492, 495, 182 S.E. 83, 85 (1935), we recognized that "interrogation alone does not exclude a reply from the *res gestae*, but the question should not prompt the answer." *Id.*, 166 W.Va. at 320, 273 S.E.2d at 600.

On the basis of the record before us, we cannot conclude that the trial court erred in admitting the statements made by Mr. Tines to Mr. Martin and to Trooper Bailes. The statements made by Mr. Tines, who was the victim of this shooting, were made while Mr. Tines was in an agitated state and was suffering from a gunshot wound to the forehead. Mr. Tines made the same statement to Mr. Martin, within minutes after the shooting, that he made to Trooper Bailes forty to forty-five minutes later. There is nothing in the record which

---

**4.** *W.Va.R.Evid.* 803 provides, in relevant part: The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(2) *Excited Utterance.*—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

indicates that the statements were a "product of premeditation, reflection, or design," or that the statement was "the result of deliberation." Thus, we conclude that Mr. Tines' statements to Mr. Martin and Trooper Bailes constituted an admissible excited utterance under *W.Va.R.Evid.* 803(2).

## II

The appellant next contends that the trial court erred in failing to declare a mistrial when the investigating officer made statements concerning the appellant's prior record. The state maintains, however, that no evidence of any prior crimes that the appellant may have committed was admitted into evidence.

The testimony of Trooper Foreman which the appellant contends manifestly prejudiced her case and warranted a mistrial is as follows:

Q. Did she appear to you to intelligently know and understand the information you were providing her?

A. Yes she—she stated while I was readin[g] her her [r]ights that she had heard it several times before.

Q. And did she then agree to—

MR. SMITH: I'm going to object to that, Your Honor, and move to strike.

THE COURT: The jury will—will disregard those last comments.

■ The decision as to whether a "manifest necessity" exists which would warrant the declaring of a mistrial is within the sound discretion of the trial court. *State v. Ayers*, 179 W.Va. 365, 370, 369 S.E.2d 22, 27 (1988); *State v. Williams*, 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983). Furthermore, we have recognized that where the trial court erroneously permits inadmissible matters to be introduced into evidence, such error does not create a manifest necessity for a mistrial within the meaning and intent of *W.Va.Code*, 62–3–7 [1923]. *State ex rel. Dandy v. Thompson*, 148 W.Va. 263, 134 S.E.2d 730, *cert. denied*, 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964). Moreover, we noted in *State v. Williams* that declaring a mistrial may not be necessary in all circumstances, and that other corrective measures, such as cautionary instructions, may be more appropriate depending upon the facts and circumstances of each case. *Id.*, 172 W.Va. at 304 n. 3, 305 S.E.2d at 260 n. 3.

■ Trooper Foreman merely made a vague reference that the appellant indicated she had heard *Miranda* warnings before. There was absolutely no testimony regarding any possible crimes for which the appellant may have been charged or convicted. Furthermore, the trial court immediately instructed the jury to disregard Trooper Foreman's statement following the objection and motion to strike made by the appellant's counsel. Clearly, there was no "manifest necessity" as contemplated by *W.Va.Code*, 62–3–7 [1923], and we conclude that the trial court did not err in refusing to grant a mistrial on this ground.

## III

■ As her third assignment of error, the appellant contends that the trial court erred in admitting into evidence testimony of the prior sexual relations between the appellant and Mr. Tines.[5] The appellant also argues that the evidence of prior sexual relations between Mr. Tines and the appellant was irrelevant and should have been excluded under *W.Va.R.Evid.* 402 and *W.Va.R.Evid.* 403.[6]

The appellant's reliances on these cases on appeal is clearly misplaced. As pointed out by the state, this is not a rape case. It is a case involving malicious wounding. The appellant, not the victim, was the defendant in this case.

**5.** In support of her argument, the appellant has cited *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979) and *State v. Pancake*, 170 W.Va. 673, 296 S.E.2d 37 (1982). These cases involved the admissibility of evidence of a rape victim's prior sexual relationship with the defendant under our rape shield law, *W.Va.Code*, 61–8B–11(a) [1986]. Yet, at the *in camera* hearing held prior to trial in the instant case, counsel on behalf of the appellant agreed that the rape shield statute did not apply to this case.

**6.** Rule 402 and Rule 403 provide as follows:
Rule 402. Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible. All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of

■ The appellant proceeded at trial on a theory of self-defense. The appellant argued that she shot Mr. Tines because he was attempting to force her to have sexual relations with him. The state maintains that evidence of the appellant's prior sexual relations with Mr. Tines was relevant and admissible to rebut the appellant's theory of self-defense. Furthermore, the state contends that this evidence did not prejudice the appellant's case.

■ We believe the issue here is whether this evidence was relevant. We recognized the definition of relevant evidence in syllabus point 2 of *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990): " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. W.Va.R.Evid. 401."

The trial judge held an *in camera* hearing to determine whether evidence of the appellant's prior sexual relations with Mr. Tines was relevant and admissible. The trial court concluded that since the appellant intended to assert that she was acting in self-defense because Mr. Tines was allegedly trying to rape her, evidence of their prior sexual relations would "be relevant for the jury to weigh one way or the other." Moreover, the state agreed that the prior sexual relations would not be mentioned in opening argument.[7]

■ It is clear that the evidence of the appellant's prior sexual relations with Mr. Tines was relevant to the issue of self-defense under *W.Va.R.Evid.* 401. Furthermore, we recognized the circuit court's discretion in ruling on the admissibility of evidence in syllabus point 2 of *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983): " 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, W.Va. [171 W.Va. 623], 301 S.E.2d 596, 599 (1983)." Finally, the appellant's case was not prejudiced by the evidence since little emphasis was placed on it by the state in the presentation of its case.[8]

Thus, on the basis of the record before us, we conclude that the trial court did not abuse its discretion.

## IV

As her final assignment of error, the appellant asserts that the verdict of the jury is contrary to the law and the evidence. The state maintains that the evidence was sufficient to support the appellant's conviction of malicious wounding.

■ This Court articulated the standard of review to test the sufficiency of the evidence presented at trial in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

---

West Virginia, these rules, or other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

7. The state made the following representation at the *in camera* hearing:

MS. GARTON: I—I'm not going to get into it in the opening, I'll let it come out in [c]ross.

THE COURT: I think that's probably good. I think the less emphasis the better it would be.

The defendant denied on direct examination that she and Mr. Tines had ever had sexual relations, and the State did not cross-examine her on this issue. In fact, the State only asked Mr. Tines one question regarding his prior sexual relations with the defendant:

Q. Okay. Had you and Martha Farmer ever had sexual relations in the past?

MR. SMITH: Note my objection, Your Honor.

A. Yeah.

THE COURT: Overruled.

MS. GARTON: His answer was yes.

THE COURT: Correct.

8. In closing argument, the state focused on the numerous inconsistencies in the appellant's testimony rather than on her relationship with Mr. Tines.

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

The elements necessary to prove malicious wounding are set forth in *W.Va. Code*, 61–2–9(a) [1978] which provides, in relevant part,

If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years.

 Viewing the evidence adduced at trial in the light most favorable to the prosecution, the record indicates that the appellant, who was then 23 years of age, telephoned 83–year–old Mr. Tines and requested that he pick her up at the Princeton bus station. The appellant and Mr. Tines stopped at a restaurant after he picked her up at the bus station, and then they returned to Mr. Tines' home. At approximately 7:00 o'clock that evening, the appellant grabbed Mr. Tines .38 caliber revolver and fired three shots. One of the bullets struck Mr. Tines in the center of his forehead, causing him to lose a significant amount of blood. Although the appellant asserted that she shot the 83–year–old Mr. Tines in self-defense because he allegedly was trying to rape her,[9] two witnesses testified that Mr. Tines told them shortly after the shooting that the appellant had shot him because he refused to give her money. Although there was conflicting testimony

presented to the jury regarding the events which led to the shooting, there was sufficient evidence to convince the jury of the appellant's guilt beyond a reasonable doubt.

Thus, for the foregoing reasons, we affirm the judgment of the Circuit Court of Mercer County.

Affirmed.

---

9. We note that, at the trial, Mr. Tines was in a wheelchair. However, at the time of the incident, Mr. Tines was using a cane in order to walk.