IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

_____

No. 14-0455

_____

**FILED**

September 24, 2015

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

STEVEN MICHAEL WILLIAMS,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Mercer County
The Honorable Omar J. Aboulhosn, Judge
Criminal Case No. 13-F-366-OA

AFFIRMED

_____

Submitted: September 15, 2015
Filed: September 24, 2015

Ryan J. Flanigan, Esq.                      Patrick Morrisey
Sanders, Austin, Flanigan & Flanigan        Attorney General
Princeton, West Virginia                    Julie A. Warren
Counsel for the Petitioner                  Assistant Attorney General
                                            Erica N. Peterson
                                            Assistant Attorney General
                                            Charleston, West Virginia
                                            Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.
CHIEF JUSTICE WORKMAN concurs and reserves the right to file a concurring
Opinion.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review.  We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a de novo review."  Syllabus Point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

2.      "Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination.  The second is that a witness may also be cross-examined about matters affecting his credibility. The term 'credibility' includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character.  The third rule is that the trial judge has discretion as to the extent of cross-examination."  Syllabus Point 4, *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982).

Justice Ketchum:

Petitioner Michael Williams was found guilty of one count of being a felon in possession of a firearm following a jury trial in Mercer County. On appeal, Mr. Williams asserts that the circuit court erred by granting a motion in limine filed by the State. The court's ruling prevented Mr. Williams from cross-examining a State witness, Victoria Combs, about the terms of a pretrial diversion agreement she had entered into with the State. Ms. Combs's criminal charge underlying her pretrial diversion agreement was not related to the charges against Mr. Williams. When Ms. Combs testified in Mr. Williams's case, she had completed the pretrial diversion agreement, and the criminal charge against her had been dismissed.

In granting the State's motion in limine, the circuit court stated, "Rule 609(a)(2) of the West Virginia Rules of Evidence requires a conviction before a witness may be impeached with a prior criminal act." The circuit court explained that because the witness had completed her pretrial diversion agreement and the charge against her had been dismissed, "there was no criminal conviction with which to impeach the witness." While the circuit court granted the State's motion, it allowed counsel for Mr. Williams to question Ms. Combs during an *in camera* hearing to explore whether she was induced or pressured into giving a statement in Mr. Williams's case. Ms. Combs testified that she was not induced or pressured into giving a statement to the investigating officer in Mr. Williams's case.

1

Mr. Williams asserts that the circuit court's ruling granting the State's motion in limine was in error, and he asks this Court to reverse his conviction and grant him a new trial.

After review, we affirm the circuit court's ruling.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, Mr. Williams was indicted on four criminal charges: two counts of wanton endangerment in violation of W.Va. Code § 61-7-12 [1994]; one count of "unlawful shooting at another in street, alley, or public resort" in violation of W.Va. Code § 61-7-11 [1989]; and one count of being a felon in possession of a firearm in violation of W.Va. Code § 61-7-7(b)(2) [2013]. This indictment resulted from a shooting incident that took place in the parking lot of a McDonald's restaurant in Princeton, West Virginia.

At approximately 3:30 a.m. on May 5, 2013, Mr. Williams, who was driving a black car with two male passengers, entered the McDonald's drive-through lane and placed an order. A car containing two males, Kody Smith and Devon Honaker ("Smith/Honaker car"), pulled in behind Mr. Williams's car at McDonald's. The men in the two cars began to argue with each other while they waited in the drive-through line. Victoria Combs was working at the McDonald's drive-through window when this

incident occurred. Ms. Combs described what she observed as she was handing Mr. Williams his food:

> We only had three cars left in our drive-thru, and I was bringing food back to the second window for the car at my window, and I heard – I don't know exactly what was being said, but it sounded like "Why don't you come," and then we have music playing in the background of our store, so I couldn't really decipher what the rest of it was.
>
> And when I brought his [Mr. Williams] drink over he was pulling the gun up onto his lap, and kind of had his head turned to the car behind him. And so I handed him his drink, shut the window and walked away.

After receiving his food, Mr. Williams pulled into a parking area near the front of the restaurant. Shortly thereafter, the Smith/Honaker car came upon Mr. Williams's car and the men continued arguing. Mr. Williams and Mr. Honaker got out of their cars and started walking toward each other. Mr. Honaker told the police that Mr. Williams pulled out a handgun and fired at him. Mr. Williams denied that he had a gun and denied shooting at Mr. Honaker. The police later determined that a bullet had struck the passenger side of the Smith/Honaker car. After the shot was fired, both men got back into their cars and drove away.

A McDonald's employee, Charles Cehen, heard the gunshot and called the police. Mr. Cehen testified that the investigating officer, State Trooper Benjamin Wood ("investigating officer"), arrived ten to fifteen minutes later and began his investigation. The first two witnesses interviewed by the investigating officer were the two McDonald's

3

employees, Mr. Cehen[1] and Ms. Combs. The investigating officer took statements from Mr. Cehen and Ms. Combs within the first thirty minutes of his investigation.

Following the investigation, Mr. Williams was charged with four criminal counts, including being a felon in possession of a handgun. Prior to trial, the State filed a motion in limine to prohibit Mr. Williams from questioning one of the McDonald's employees, Ms. Combs, about a conspiracy to commit robbery charge she previously faced. The circuit court held a hearing on this motion, and described the substance of the State's motion as follows:

> It's my understanding that the State wants to limit the defense from inquiring of Victoria Combs regarding a plea that she entered into where adjudication was held in abeyance. She ultimately completed her probation and her probation – as a result of that, the court ultimately expunged her record and dismissed the case. So there was never an adjudication, never a finding of guilt.

Ms. Combs entered into a pretrial diversion agreement with the State on September 19, 2012, approximately eight months before the shooting incident involving Mr. Williams in the McDonald's parking lot. Ms. Combs pled guilty to a felony conspiracy charge but per the pretrial diversion agreement, the guilty plea was held in abeyance and Ms. Combs was placed on probation for twenty-four months. According to

---

[1] Mr. Cehen witnessed the men in the two cars arguing with each other while they were in the drive-through lane, but he did not see the confrontation between Mr. Williams and Mr. Honaker in the parking lot.

the plea agreement, if Ms. Combs successfully completed her probation, she would be permitted to withdraw her guilty plea and the case against her would be dismissed.

Ms. Combs was on probation at the time of the shooting in the McDonald's parking lot. Ms. Combs had completed her probation and was no longer facing any criminal charges at the time of Mr. Williams's trial.[2] Counsel for Mr. Williams argued that he should be allowed to question Ms. Combs about her probation stemming from the pretrial diversion agreement to determine whether she was pressured or induced by the investigating officer into making a statement implicating Mr. Williams. Counsel for Mr. Williams admitted that there was no evidence or factual basis suggesting that the

---

[2] While Ms. Combs's pretrial diversion agreement stated that she was to be on probation for twenty-four months, she was released from her probation after twelve months. There was no testimony or suggestion that Ms. Combs was released from probation early because of her testimony in Mr. Williams's case. In fact, during the hearing on Mr. Williams's post-trial motion for a new trial, Ms. Combs's probation officer testified that she was unaware that Ms. Combs had testified in Mr. Williams's case until the morning of the post-trial motion: "This morning was the first I ever heard about the shooting, or anything about it." The circuit court asked Ms. Combs's probation officer why she was released from probation after twelve months. Her probation officer testified:

> She [Ms. Combs] had done very well on probation. She had completed all her requirements. Also, she's not originally from here. She is from northern Virginia. The only reason she moved here was because her husband was from here, and they've since divorced. She was living with her mother-in-law, which was a very stressful situation. So she had asked to return to the state of Virginia. Since she had completed all her requirements, I asked the Judge if he would go ahead and just release her so she could go home.

investigating officer induced or pressured Ms. Combs into giving a statement. Instead, counsel stated, "I don't know if Ms. Combs made this story up about seeing the driver with a gun that night to get in good with the police. I don't know if she got any consideration for it."

To be clear, the undisputed facts are that the investigating officer arrived at McDonald's ten to fifteen minutes after the shooting occurred. The two McDonald's employees, Mr. Cehen and Ms. Combs, were the first two witnesses interviewed by the investigating officer. Ms. Combs gave her statement within the first thirty minutes of the investigation. Counsel for Mr. Williams did not explain why the investigating officer, thirty minutes into his investigation and interviewing the first two fact witnesses, would have pressured or induced Ms. Combs into making a statement implicating Mr. Williams.

Counsel for the State disputed the notion that Ms. Combs was offered any consideration by the investigating officer in exchange for the statement she made. Counsel for the State told the circuit court:

> There was absolutely no consideration whatsoever. The officer is responding – the incident occurred about 4 a.m. in the morning at McDonald's. She is working the window. As she's working the window, her testimony will be that she heard the defendant yelling at the car behind him, and that she saw him reach into the console, get a gun, and place it on his lap.
>
> Circuit Court: And she gave that statement the night of the incident?
>
> State Counsel: Yes, sir. It was probably maybe an hour or so later. . . .

6

Circuit Court: Let me make sure I understand, the only time he [investigating officer] took a statement from her was the night of the incident?

State Counsel: Yes, sir.

Circuit Court: So how could . . . they [the police] have solicited this statement in return for having her case dismissed early? I mean, there's no – there's no . . . factual basis to say that's how this happened.

At the conclusion of this hearing, the circuit court granted the State's motion in limine to prohibit Mr. Williams from questioning Ms. Combs about her prior pretrial diversion agreement and the probation term contained therein. However, the court offered to hold an *in camera* hearing prior to Ms. Combs's trial testimony to allow Mr. Williams to question her about whether she felt pressured or was offered anything in exchange for giving the police a statement. The court stated that if Ms. Combs testified that she was pressured or induced into giving the police a statement, it would overrule the State's motion in limine.

The trial began on February 18, 2014. Ms. Combs was the fourth witness called by the State. Prior to her testimony before the jury, the circuit court conducted the *in camera* it had previously discussed. During this hearing, Ms. Combs testified that she was not offered any type of deal or support in exchange for making a statement to the investigating officer; that she did not feel pressured into giving the statement; that she did not receive anything in exchange for giving the statement; and that she did not receive any promises from the State in exchange for giving the statement. Following this

7

testimony, the circuit court reaffirmed its prior ruling granting the State's motion in limine.

At the conclusion of the trial, the jury found Mr. Williams not guilty on the first three counts in the indictment (two counts of wanton endangerment and one count of "unlawful shooting at another in street, alley, or public resort").[3] The jury found Mr. Williams guilty on the fourth count in the indictment—felon in possession of a firearm.

Mr. Williams filed a motion for a new trial on April 7, 2014, asserting that the circuit court erred by granting the State's motion in limine regarding Ms. Combs's pretrial diversion agreement and her probation status. By order entered on April 11, 2014, the circuit court denied this motion and sentenced Mr. Williams to a determinate sentence of four years in the penitentiary.

Mr. Williams appeals the circuit court's order denying his motion for a new trial to this Court.

---

[3] While Mr. Honaker testified that the driver, Mr. Williams, fired the gunshot, he also testified that the shooter was wearing a black shirt. Mr. Williams was wearing a white t-shirt when the incident occurred. The other two passengers in Mr. Williams's car were wearing black shirts. Further, one of the passengers in Mr. Williams's car, Tyrek Miller, testified that Mr. Williams did not fire the shot. Instead, Tyrek Miller stated the third person in Mr. Williams's car fired the shot, a man named Anthony Webb. Additionally, a gunpowder residue test performed on Mr. Williams was negative.

8

## II.

## STANDARD OF REVIEW

Mr. Williams appeals the circuit court's order denying his motion for a new trial. This Court's standard of review when addressing a circuit court's order denying a motion for a new trial is set forth in Syllabus Point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000):

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

With this standard in mind, we proceed to consider the parties' arguments.

## III.

## ANALYSIS

The sole issue Mr. Williams raises on appeal is whether the circuit court erred when it granted the State's motion in limine preventing Mr. Williams from inquiring about the terms of Ms. Combs's pretrial diversion agreement. As such, Mr. Williams alleges that he was denied his Sixth Amendment right to confront an accuser and that the jury was not able to fully judge Ms. Combs's credibility.

By way of background, "the Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the

9

witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)." *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110 (1974). In determining whether restrictions on cross-examination violate the Confrontation Clause, courts look at: (1) whether the excluded evidence was relevant; (2) whether there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness. *United States v. Larson*, 495 F.3d 1094, 1103 (9th Cir. 2007). Additionally, this Court has set forth the following general guidelines regarding cross-examination:

> Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

Syllabus Point 4, *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982).

Mr. Williams argues that he should have been allowed to explore Ms. Combs's credibility. Specifically, counsel wanted to ask her whether the investigating officer pressured or induced her into giving a statement to "get in good with the police" because of her pretrial diversion agreement. Additionally, Mr. Williams argues that the present case is analogous to *Davis v. Alaska*, *supra*, in which the United States Supreme

Court stated that the defendant should have been allowed to cross-examine a witness about whether he faced undue pressure to cooperate with the police because of his status as a probationer.

By contrast, the State argues that Ms. Combs's pretrial diversion agreement, including the agreement's probation term, was not relevant to any issue before the circuit court and was completely unrelated to Mr. Williams's crime. Further, the State argues that it would have been improper to allow Mr. Williams to question Ms. Combs about her pretrial diversion agreement under Rule 609(a)(2) of the West Virginia Rules of Evidence because Ms. Combs was never convicted of a crime. Finally, the State asserts that the present case is analogous to *State v. Lori. F.*, No. 12-0235, 2013 WL 2301088 (W.Va. Supreme Court, May 24, 2013) (memorandum decision), in which this Court affirmed the circuit court's denial of a witness being cross-examined about the crime underlying his pretrial diversion agreement.

After review, we agree with the State. Mr. Williams has failed to offer any factual basis demonstrating that Ms. Combs's pretrial diversion agreement, and the probation term contained therein, created any bias that affected the statement she gave the investigating officer in Mr. Williams's case. The pretrial diversion agreement was made eight months before the shooting. The investigating officer arrived at McDonald's ten to fifteen minutes after the shooting. Ms. Combs was one of the first two witnesses the investigating officer spoke to and she gave her statement to the officer within the first

11

thirty minutes of the investigation. Trooper Wood, the investigating officer, was the only person who took a statement from Ms. Combs.

Based on these facts, Mr. Williams has failed to show any relevance between Ms. Combs's pretrial diversion agreement and the statement she gave to Trooper Wood. It strains credulity to accept Mr. Williams's argument that Ms. Combs may have been pressured or induced by the investigating officer, thirty minutes into his investigation, in the midst of an interview with a McDonald's employee, in order to nefariously implicate Mr. Williams.

Next, we find that the circuit court did not abuse its discretion by determining that Mr. Williams could not cross-examine Ms. Combs about her pretrial diversion agreement pursuant to Rule 609(a)(2) of the West Virginia Rules of Evidence. Under Rule 609, counsel is permitted to discredit a witness by showing that the witness has been convicted of a crime. "Rule 609, a credibility rule, governs the use of prior criminal convictions to impeach the general credibility of a testifying witness. The rule has no other purpose." Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, *Handbook on Evidence for West Virginia Lawyers*, § 609.02[1][a] (5th ed.2012)). Rule 609(a) states:

> (a) General Rule. . . .
>
> (2) All Witnesses Other Than Criminal Defendants. For the purpose of attacking the credibility of a witness other than the accused
>
> (A) evidence that the witness has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was

12

punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and

(B) evidence that the witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Ms. Combs was never convicted of a crime—she completed her pretrial diversion agreement and the criminal charge against her was dismissed before she testified. As one legal treatise noted, pretrial diversion agreements, also known as deferred adjudication agreements, are not convictions:

> Deferred adjudication is not a conviction or a finding or verdict of guilt, but is a type of community supervision. A deferred judgment is akin to a sentence of probation. . . . In granting deferred adjudication, the court defers further proceedings and places the defendant on community supervision without entering an adjudication of guilt. The purpose of statutory authority to withhold judgment and ultimately to dismiss a charge is to provide an opportunity for rehabilitation and to spare the defendant, particularly a first offender, the burden of a criminal record.

22A C.J.S. Criminal Law § 558 (2015) (internal footnotes omitted).[4] Mr. Williams concedes that "pursuant to the language contained within Rule 609 . . . that at the time of

---

[4] W.Va. Code § 61-11-12 [2010] authorizes prosecutors to enter into pretrial diversion agreements with a person who is under investigation or has been charged with an offense against the state. W.Va. Code § 61-11-12 states, in part:

> (a) A prosecuting attorney of any county of this state or a person acting as a special prosecutor may enter into a pretrial diversion agreement with a person under investigation or charged with an offense against the state of West Virginia,

(continued . . .)

13

trial Ms. Combs was not technically a convicted felon." Because there is no dispute that Ms. Combs was not *convicted* of a crime, we find that the circuit court did not abuse its discretion by excluding Mr. Williams from inquiring about Ms. Combs's pretrial diversion agreement pursuant to Rule 609.

---

when he or she considers it to be in the interests of justice. The agreement is to be in writing and is to be executed in the presence of the person's attorney, unless the person has executed a waiver of counsel.

(b) Any agreement entered into pursuant to the provisions of subsection (a) of this section may not exceed twenty-four months in duration. The duration of the agreement must be specified in the agreement. The terms of any agreement entered into pursuant to the provisions of this section may include conditions similar to those set forth in section nine, article twelve, chapter sixty-two of this code relating to conditions of probation. The agreement may require supervision by a probation officer of the circuit court, with the consent of the court. An agreement entered into pursuant to this section must include a provision that the applicable statute of limitations be tolled for the period of the agreement.

(c) A person who has entered into an agreement for pretrial diversion with a prosecuting attorney and who has successfully complied with the terms of the agreement is not subject to prosecution for the offense or offenses described in the agreement or for the underlying conduct or transaction constituting the offense or offenses described in the agreement, unless the agreement includes a provision that upon compliance the person agrees to plead guilty or nolo contendere to a specific related offense, with or without a specific sentencing recommendation by the prosecuting attorney.

The State also asserts, and we agree, that this Court's ruling in *State v. Lori. F., supra*, supports its position. In *Lori F.*, a fact witness testifying for the State had previously entered into a pretrial diversion agreement on a criminal charge unrelated to the defendant's case. As in the present case, the witness in *Lori F.* had completed his pretrial diversion agreement before he testified in the defendant's case. On appeal, the defendant argued that the circuit court erred by failing to allow her to inquire about the crime underlying the witness's pretrial diversion agreement. In affirming the circuit court's ruling, this Court explained:

> [W]e find that the crime with which Mr. Sharp [the State witness] was charged was simply not relevant to any issue before the circuit court and was totally unrelated to petitioner's crime. Petitioner argues that she was not allowed to impeach the witness by addressing the pretrial diversion agreement, but Rule 609(a)(2) of the West Virginia Rules of Evidence requires conviction before a witness may be impeached with a prior criminal act. Simply put, there was no criminal conviction with which to impeach the witness. Further, it is clear Mr. Sharp was not motivated to testify against petitioner in order to avoid prosecution because he entered the pretrial diversion agreement prior to the date he reported petitioner's conduct and the agreement was fully discharged prior to his testimony. The agreement did not call for Mr. Sharp to testify in any matters and he therefore had no need to "get in good with the police." For these reasons, the Court finds no error in limiting the scope of petitioner's cross-examination in this regard.

*Lori F.*, 2013 WL 2301088 at 3. Similarly, Ms. Combs was not motivated to give a statement against Mr. Williams in order to avoid prosecution because she had entered into her pretrial diversion agreement eight months prior to giving the statement to the investigating officer. Further, Ms. Combs's agreement was fully discharged prior to her

15

testimony at Mr. Williams's trial. As Ms. Combs testified during the *in camera* hearing, at which time she was no longer on probation and had no need to "get in good with the police," she gave her statement to the investigating officer within a half-hour of the shooting; she did not feel pressured into giving her statement; and she was not offered any inducement or promise by the officer in exchange for her statement. For these reasons, our ruling in this case is consistent with this Court's ruling in *Lori F.*

Mr. Williams argues that he was entitled to inquire about Ms. Combs's pretrial diversion agreement and the probation term contained therein under the Supreme Court's ruling in *Davis v. Alaska*, *supra*. We disagree and find that the facts in *Davis* are clearly distinguishable from those in the present case.

In *Davis*, the State witness was a potential suspect in the crime for which he made a statement to the police. Unlike Ms. Combs, the State witness in *Davis* had not entered into a pretrial diversion agreement. Rather, the State witness *had been adjudicated* of juvenile delinquency for burglarizing two cabins and was on probation when he gave the police a statement about another burglary. The burglary in *Davis* involved a safe that was stolen from a bar, and the empty safe was later found near the State witness's house. The bar was owned by the State witness's stepfather. Due to his previous burglary crimes for which *he had been adjudicated*, and due to the proximity and connection the State witness had to the stolen item, he was a potential suspect in the robbery. Based on these facts, the Court concluded that the defendant was entitled to attempt to show that the witness was biased because of his concern that he might be a

16

suspect in the burglary charged against the defendant, and because his probation could have been revoked if the police discovered that he had been involved in the robbery. *Id*., 415 U.S. at 315, 94 S.Ct. at 1110-1111.

In the present case, however, there is no suggestion that Ms. Combs was a suspect in the McDonald's shooting. The only connection Ms. Combs had to the crime was that she was working at McDonald's when it occurred. Thus, there is a substantial difference between the facts in the present case and those in the *Davis* case.

Finally, we note that under Syllabus Point 4 of *Richey*, *supra*, a trial judge has discretion as to the extent of cross-examination. In the present case, the trial judge held a hearing on the motion in limine, considered the motion in light of Rule 609 of the West Virginia Rules of Evidence, and conducted an *in camera* hearing in which Ms. Combs testified. Based on the hearing and Ms. Combs's testimony, the trial judge concluded that there was no factual basis for Mr. Williams's assertion that Ms. Combs's pretrial diversion agreement could have led to her being pressured or induced into giving a statement to the investigating officer. We therefore find that the trial judge did not abuse his discretion in granting the State's motion in limine.

## IV.

## CONCLUSION

The circuit court's April 11, 2014, order denying Mr. Williams' motion for a new trial is affirmed.

Affirmed.

17