IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0467
_____

FILED
April 25, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

MICHAEL C.,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Mercer County
The Honorable Derek C. Swope, Judge
Criminal Case No. 19-F-94-DS

REVERSED AND REMANDED
_____

Submitted: February 1, 2023
Filed: April 25, 2023

Gary A. Collias, Esq.
Appellate Advocacy Division
Public Defender Services
Charleston, West Virginia
Counsel for Petitioner

Patrick Morissey, Esq.,
Attorney General
Mary Beth Niday, Esq.,
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

1.      "'"Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk,* [171 W.Va. 639], 301 S.E.2d 596, 599 (1983).' Syl. pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983)." Syl. Pt. 4, *State v. Farmer,* 185 W.Va. 232, 406 S.E.2d 458 (1991).

2.      "'The extent to which prior convictions may be introduced to impeach the credibility of a witness other than the defendant in a criminal trial rests within the sound discretion of the trial court.' Syl. Pt. 9, *State v. Davis*, 176 W. Va. 454, 345 S.E.2d 549 (1986)." Syl. Pt. 2, *State v. Greenfield*, 237 W. Va. 773, 791 S.E.2d 403 (2016)

3.      The question of whether or not the evidence of a witness's prior conviction is relevant is not a factor in determining its admissibility under West Virginia Rule of Evidence 609; by definition, the evidence is relevant to impeach the witness's credibility.

4.      Where a party seeks to admit evidence of a witness's eligible prior conviction pursuant to West Virginia Rule of Evidence 609, the sole issue to be determined by the circuit court is whether the probative value of the impeachment evidence is substantially outweighed by the danger of one or more of the factors enumerated in West

Virginia Rule of Evidence 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**WOOTON, Justice:**

Following a jury trial in the Circuit Court of Mercer County, West Virginia, the petitioner, Michael C.,[1] was convicted on one count of "Child Abuse Resulting in Serious Bodily Injury." *See* W. Va. Code § 61-8D-3(b) (2020). The four and one-half-month-old victim, A.O. ("the baby"), suffered permanent, life-altering injuries, including blindness and severe, pervasive developmental delay, as a result of non-accidental trauma.

The petitioner's defense, which he was precluded from advancing by virtue of two evidentiary rulings made by the circuit court, was that the testimony of the baby's mother ("T.E."), the State's key witness, was not credible. To that end, the petitioner sought to introduce evidence pursuant to Rule 404(b) and/or Rule 609[2] of the West Virginia Rules of Evidence that two years earlier the mother had been convicted in the Commonwealth of Virginia of felony child endangerment, a charge arising from her failure to provide nutrition and medical care to her six-month-old daughter.[3] The circuit court refused

---

[1] Because of the sensitive nature of the facts alleged in this case, we use the initials of the affected parties. *See State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n. 1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victim . . . [is] related to the appellant, we have referred to the appellant by his last name initial." (citations omitted)); *see also* W. Va. R. App. P. 40(e).

[2] The relevant language of Rule 609 is set forth and discussed *infra* in greater detail.

[3] Although the record is not clear on this point, it appears that the mother's custodial and/or parental rights to this child may have been terminated during the course of concurrent abuse and neglect proceedings.

admission of the evidence under Rule 404(b), finding that its "prejudicial impact outweighs the probative value, because this isn't a neglect case. This is a somebody beat the hell out of this kid case. It's just a different thing." The court also refused to admit the evidence for impeachment purposes under Rule 609, finding that under the balancing test set forth in Rule 403, the evidence was more prejudicial than probative.

Upon careful review of the parties' briefs and oral arguments, the appendix record, and the applicable law, we conclude that the circuit court erred in refusing to admit the mother's prior conviction as impeachment evidence pursuant to Rule 609.[4] Further, under the facts and circumstances of this case as discussed *infra*, the error cannot be deemed harmless. We therefore reverse the circuit court's decision and remand this case for a new trial.

## I. Facts and Procedural Background

Somewhere around 8:00 p.m. on the evening of April 10, 2019, the petitioner and T.E. picked up T.E.'s infant son, A.O., from the home of his grandparents, and transported him to T.E.'s residence. There, T.E. played with the baby, fed him, and put him to bed, during which time she testified that he appeared normal in all respects.

---

[4] In view of our holding that the circuit court erred in refusing to admit the evidence pursuant to Rule 609, we find it unnecessary to discuss the court's ruling as to admissibility of the evidence pursuant to Rule 404(b).

The petitioner spent that night at T.E.'s home, and the following morning, April 11, 2019, T.E. got up with the baby, changed him, and fed him, during which time she testified that he was again "playful" and "normal" in all respects. The petitioner took over caring for the baby when T.E. left for work at approximately 8:00 a.m. At 9:37 a.m., the petitioner texted T.E. to report that the baby wasn't eating well, having taken only part of his bottle, and at 2:13 p.m. he texted her again to report that the baby still wasn't eating, had vomited, and seemed lethargic.

After T.E. returned home somewhere between 5:00 and 6:00 p.m., she took the baby to the Emergency Room at Princeton Community Hospital in Princeton, West Virginia, where she reported that the baby was lethargic, had vomited once, and had a rash to the face and arms. The medical records indicate that the baby was triaged at 8:00 p.m. Dr. Ricky Lee Bradley, who was on duty and examined the baby, testified that the infant was somewhat lethargic but that his pupils were reactive, he had no deviated gaze, had no observable rash, and had no problems, either reported or observed, with moving his right arm or right leg. Dr. Bradley's main concern was with possible dehydration, which he testified can cause lethargy, so he gave the baby a bolus of fluid and suggested that he be admitted to the hospital for observation. T.E. demurred, stating that she would follow up with the baby's regular doctor the following morning, after which she left the hospital with the child.

The next morning, April 12, 2019, the baby was examined by his regular pediatrician, Dr. Jamie Yahya Blankenship. T.E. reported to Dr. Blankenship that from 4:00 p.m. on April 11, 2019, and onward, the baby seemed extremely ill, with lethargy, irritability, and deviated gaze; T.E. further reported that the baby was not moving his right arm or leg normally. Dr. Blankenship testified that on examination the baby was lethargic; his anterior fontanelle (the "soft spot" on his head) was full;[5] his pupils were non-reactive; he was uncomfortable at being touched; he had a petechial rash on his forehead; and he had bruises on his left brow and right chin. Dr. Blankenship sent the baby back to the Emergency Room at Princeton Community Hospital, where Dr. Matthew Dellacona diagnosed a subdural hematoma on the left side of the baby's brain and ordered him life-flighted to Carilion-Roanoke Memorial Hospital in Roanoke, Virginia.

At the Roanoke facility, the baby was examined by Lisa Yates, a forensic nurse examiner, and treated in the intensive care unit ("ICU") by Dr. Randall Ruppel. Ms. Yates testified that the baby had bruising along his jaw line, under the chin, and around the nose, and that his fontanelle was swollen. Dr. Ruppel testified that the baby had had a subacute stroke resulting from the subdural hemorrhage, and that he remained at the hospital in Roanoke for several weeks of live-saving treatment.

---

[5] A full fontanelle indicates increased pressure inside the brain.

In addition to the treating physicians and the forensic nurse examiner, all of whom testified at trial, the State retained two expert physicians to review the medical records. Dr. Joan Phillips testified that the baby's injuries, subdural and subarachnoid hemorrhage, edema of the brain, encephalopathy, retinal hemorrhage, fractured skull, and bruises on multiple planes of the body, resulted from what she characterized as "abusive head trauma with impact." Dr. Wilbur L. Smith stated that his review of the baby's medical imaging indicated that the baby had a broken right femur as well as the injuries catalogued by Dr. Phillips.

The petitioner was indicted on June 11, 2019, on one count of "Child Abuse Resulting in Serious Bodily Injury." *See* W. Va. Code § 61-8D-3(b).[6] Of specific relevance to this appeal, during pre-trial proceedings defense counsel filed a "Motion for Use of 404 Evidence of Witness," seeking to use T.E.'s conviction in Tazwell County, Virginia, for Child Endangerment in violation of the Code of Virginia 1950 Annotated section 18.2-371.1(B)(1.) (2021 & Supp. 2022), which provides that

> [a]ny parent, guardian, or other person responsible for the care
> of child under the age of 18 whose willful act or omission in
> the care of such child was so gross, wanton, and culpable as to
> show a reckless disregard for human life is guilty of a Class 6
> felony.

---

[6]West Virginia Code section 61-8D-3(b) provides, in relevant part, that "[i]f any parent, guardian or custodian shall abuse a child and by such abuse cause said child serious bodily injury as such term is defined in section one, article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony[.]"

*Id.* The factual basis for the Virginia charge was that T.E. failed to feed, or properly feed, her six-month-old child, and failed to provide her with necessary medical care. Defense counsel argued that the evidence was admissible under Rule 404(b) to show absence of mistake and lack of accident on the part of T.E., who had a "window of opportunity for the infliction of the victim's injuries" when she, rather than the petitioner, was caring for the baby. Following briefing and argument the circuit court denied the motion, concluding in essence that the Virginia conviction, which the court characterized as one involving neglect, was not probative as to the West Virginia charge, which the court characterized as one involving abuse.

Thereafter, defense counsel moved for admission of the evidence to impeach T.E.'s credibility pursuant to Rule 609. The court took the issue under advisement, and the case ultimately proceeded to trial on March 30, 2021. At trial, neither the extent of the baby's injuries, nor the fact that those injuries had been sustained as a result of non-accidental trauma, was contested. Rather, the sole and dispositive issue for resolution by the jury was whether the baby's injuries had been sustained during the period of time when he was alone with the petitioner. In order to lay the necessary factual foundation, the State first offered the testimony of T.E. that the baby had no symptoms prior to 8:00 a.m. on April 11, 2019, when she left him in the petitioner's care. Prior to cross-examining T.E., defense counsel again sought a ruling on his pending motion for admission of the witness's prior conviction pursuant to Rule 609. Following a brief discussion at sidebar, the circuit court denied the motion on the ground that "under 403 the prejudicial impact outweighs

6

the probative value[,]" agreeing with the State's contention that admission of the evidence under Rule 609 was just a "back door attempt" to circumvent the court's denial of admission of the evidence under Rule 404(b). Accordingly, defense counsel was left with nothing to support the petitioner's sole defense: that T.E.'s testimony as to the baby's condition prior to 8:00 a.m. on April 11th was not credible.

Following T.E.'s testimony, the State then offered the testimony of the medical providers to establish that the onset of the baby's symptoms first appeared within the expected time frame had his injuries been inflicted between 8:00 a.m. and 5:00 p.m. on April 11th. As to that critical issue, the evidence was conflicting. Dr. Bradley testified that with neurological injury, "it's very variable when symptoms are going to occur," and Dr. Dellacona testified that when dealing with neurological injury, "the timeframe is dependent on multiple variables." Dr. Ruppel testified that the subacute stroke resulted from the subdural hemorrhage, which would have happened within twenty-four hours to five days prior, and that there's "no way to pinpoint that down to an exact science," although the symptoms are typically at their worst "somewhere between 48 and 72 hours." In stark contrast, Dr. Smith testified that the symptoms from subarachnoid hemorrhage would have virtually no latent period, and that the baby's injuries must have occurred between 8:00 a.m. and 9:00 a.m. on April 11, 2019.

At the conclusion of the three-day trial, the petitioner was found guilty on the sole count in the indictment and sentenced to the maximum statutory penalty of imprisonment for not less than two nor more than ten years. This appeal followed.

## II. Standard of Review

The general rule is well established in our case law that

> """[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk,* [171 W.Va. 639], 301 S.E.2d 596, 599 (1983).' Syl. pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983)."

Syl. Pt. 4, *State v. Farmer,* 185 W.Va. 232, 406 S.E.2d 458 (1991). Of specific relevance to the instant case, "'[t]he extent to which prior convictions may be introduced to impeach the credibility of a witness other than the defendant in a criminal trial rests within the sound discretion of the trial court.' Syl. Pt. 9, *State v. Davis*, 176 W. Va. 454, 345 S.E.2d 549 (1986)." Syl. Pt. 2, *State v. Greenfield*, 237 W. Va. 773, 791 S.E.2d 403 (2016).

## III. Discussion

Rule 609(a)(2)(A) of the West Virginia Rules of Evidence provides, in relevant part:

> *All Witnesses Other Than Criminal Defendants*. – For the purpose of attacking the credibility of a witness other than the accused . . . evidence that the witness has been convicted of a crime *shall be admitted*, subject to rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law which the witness was convicted . . . .

W. Va. R. Evid. 609(a)(2)(A) (emphasis added). As this Court noted in *State v. Williams*, 236 W. Va. 130, 778 S.E.2d 579 (2015), the purpose of the rule is simple and straightforward: "Under Rule 609, counsel is permitted to discredit a witness by showing that the witness has been convicted of a crime." 236 W. Va. at 136, 778 S.E.2d at 585. The language of the rule is mandatory, evidencing a presumption that a witness's conviction of *any* crime punishable by imprisonment in excess of one year is fair game for impeachment and thus relevant to the witness's credibility.

Admissibility of a prior felony conviction to impeach a witness is subject only to a finding that the probative value of the evidence is substantially outweighed by one or more of the factors set forth in Rule 403 of the West Virginia Rules of Evidence:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

*Id*. In excluding the evidence of T.E.'s conviction for felony child endangerment, the circuit court stated that "under 403 the prejudicial impact outweighs the probative value, because this isn't a neglect case. This is a somebody beat the hell out of this kid case. It's just a different thing."[7] Inasmuch as the quoted language comprised the entirety of the

---

[7] The court made no findings that evidence of T.E.'s conviction would confuse the issues, mislead the jury, cause undue delay, waste time, and/or be needlessly cumulative; and this Court, having reviewed the appendix record including the trial transcript, can find no factual basis that would support any such legal determinations.

9

court's reasoning, it is fair to say that its ruling rested on two legal conclusions: that the evidence of T.E.'s conviction was not probative because it was for a crime different in type or degree than the crime charged in the instant case; and that admission of impeachment evidence would be prejudicial – in some unspecified way, to some unspecified person or entity. We find the court's analysis to be legally flawed.

We begin with the text of Rule 609, which makes it clear that evidence of a witness's prior felony conviction is per se relevant to impeach the witness's credibility, which this Court has defined as "includ[ing] the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character." *Williams*, 236 W. Va. at 131, 778 S.E.2d at 581, Syl. Pt. 2, in part (citing Syl. Pt. 4, in part, *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982)). Succinctly stated, "Rule 609, a credibility rule, governs the use of prior criminal convictions to impeach the general credibility of a testifying witness. The rule has no other purpose." FRANKLIN D. CLECKLEY, ROBIN J. DAVIS, & LOUIS J. PALMER, *HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS* § 609.02[1][a] (5th ed. 2012).

Thus, the question of whether or not the evidence of a witness's eligible prior conviction is relevant is not a factor in determining its admissibility under West Virginia Rule of Evidence 609; by definition, the evidence is relevant to impeach the witness's credibility. Further, nothing in the language of the rule can be read to suggest that the credibility of a witness can only be impeached by showing that he or she committed a crime

10

similar to that at issue in the case at bar, which seems to have been the circuit court's underlying assumption.[8] Where a party seeks to admit evidence of a witness's eligible prior conviction pursuant to West Virginia Rule of Evidence 609, the sole issue to be determined by the circuit court is whether the probative value of the impeachment evidence is substantially outweighed by the danger of one or more of the factors enumerated in West Virginia Rule of Evidence 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *Id.*

Inasmuch as the circuit court's ruling in this case rested entirely on its finding that the evidence was irrelevant, *see* text *supra*, and that its "prejudicial impact outweigh[ed] the probative value," we will focus our analysis on the issue of prejudice. The issue is straightforward and readily resolved by reviewing the language of Rule 403: the rule requires, as a basis for refusing to admit relevant evidence, a finding by the circuit court that the probative value is *substantially* outweighed by the danger of *unfair* prejudice. In the instant case, the court made neither finding, and indeed, in the absence of any specificity as to what the prejudice actually was, it would be impossible to characterize it as "unfair" or to quantify it as "substantially" outweighing the probative value of the evidence. This observation has particular force where, as here, the evidence is offered by

---

[8] The State argued, and the circuit court agreed, that if the evidence wasn't admissible under Rule 404(b), it couldn't come in through the "back door" of Rule 609. As clearly set forth in the text of these rules, however, they are wholly separate in purpose, and the exclusion of evidence pursuant to the former does not preclude its admission pursuant to the latter.

11

the defense, not by the State. *See State v. Zuccaro*, 239 W. Va. 128, 140, 799 S.E.2d 559, 571 (2017) ("under Rule 403 the risk of prejudice is not likely to be as great when the defendant in a criminal case offers collateral evidence against a third person.") (citation omitted)); *cf. State v. McGinnis*, 193 W. Va. 147, 154 n.6, 455 S.E.2d 516, 523 n.6 (1994) (citing *United States v. Aboumoussallem*, 726 F.2d 906, 911 (2nd Cir. 1984) for the proposition that "a defendant's offer of 404(b) evidence 'as a shield need not be as restrictive as when a prosecutor uses such evidence as sword' because the problems of prejudice 'are normally absent.'").

In summary, the evidence of T.E.'s prior felony conviction was clearly admissible under Rule 609, and there was no justifiable basis for excluding it under Rule 403 on the ground that it was "prejudicial" in some nebulous, unspecified way. The circuit court clearly erred in its evidentiary decision to the contrary.

Notwithstanding the circuit court's clear error in its evidentiary ruling, the State argues that nonetheless, the error was harmless because the evidence at trial was sufficient to support the petitioner's conviction. We disagree. In this case, the petitioner's sole defense would have been an attack on T.E.'s credibility, since the jury had only her word for it that the baby was "fine," "playful," and "normal" during the twelve-hour period before the petitioner took over his care. Inasmuch as all of the State's medical witnesses' opinions were premised on the assumption that the baby showed no symptoms prior to when the petitioner took over his care – an assumption that was based entirely on what T.E.

12

had told them – it is fair to characterize T.E. as the State's key witness, the lynchpin to its case against the petitioner.

As noted *supra*, the effect of the circuit court's ruling was to preclude the petitioner from putting on any impeachment evidence relating to the credibility of the State's primary witness, T.E., in a case where challenging T.E.'s credibility was the petitioner's sole defense.[9] Accordingly, because the impeachment evidence was admissible pursuant to West Virginia Rule of Evidence 609 and was not substantially outweighed by one or more of the factors enumerated in West Virginia Rule of Evidence 403, the court's exclusion of the Rule 609 evidence under the facts and circumstances of this case was reversible error and the petitioner is entitled to a new trial.

## IV. Conclusion

The judgment of the Circuit Court of Mercer County, West Virginia, is reversed, and this case is remanded for a new trial.

Reversed and remanded.

---

[9] *Cf. State v. Jenkins,* 195 W.Va. 620, 628, 466 S.E.2d 471, 479 (1995) ("a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right . . . to offer testimony in support of his or her defense[.]"); *see also State v. Whitt*, 220 W. Va. 685, 690, 649 S.E.2d 258, 263 (2007), *modified on other grounds by State v. Herbert*, 234 W. Va. 576, 767 S.E.2d 471 (2014).